MARY R. NICHOLS, ADMINISTRATRIX, *vs.* THE TOWN OF MANCHESTER.

First Judicial District, Hartford, October Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

Where a finding is so altered on appeal that the case as finally considered by this court is materially different from that upon which the conclusion of the court below was based, a new trial will be ordered.

Argued October 6th, 1909—decided January 4th, 1910.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate, and alleged to have been caused by a defective highway, brought to and tried by the Superior Court in Hartford County, *Bennett, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *Error and new trial ordered.*

*Leslie W. Newberry* and *Richard J. Goodman,* for the appellant (plaintiff).

*Theodore M. Maltbie* and *Olin R. Wood,* for the appellee (defendant).

RORABACK, J.   The complaint alleged that the injuries causing the death of Mr. Nichols were occasioned by a defect in a highway of the defendant town.   The defect alleged was a large tree stump so located as to render the highway at this point unsafe for travel.   The case was tried to the court under an answer of denials and other matters of defense.   The court found that the highway was defective and unsafe; and all other issues were decided in favor of the plaintiff except the question as to due care.

The plaintiff claims that it appears, from the specific facts found, that the court erred in holding that the plaintiff had failed to prove that her intestate was in the exercise of due care.   The plaintiff also claims certain corrections in the finding.

At the time the injuries were received, the highway where the accident occurred was a much traveled thoroughfare.   There was a tree stump within thirteen inches of the west wheel rut.   This stump was one and six tenths feet in diameter at the bottom, and one and four tenths feet in diameter at the top.   The stump had been cut off in such a manner as to leave it highest on the side farthest away from the road.   The height on this side being one and three tenths feet, and the height on the side near the wheel track was six inches.

On the day of the accident, and for a long time previous, the general course of travel was along the west side of the highway with a bend around the stump, so that a straight line through the stump would have intersected the wheel tracks a short distance each side of the stump.   These conditions made the road unsafe, and endangered travel over the highway.   It was here that the injury which caused the death of Mr. Nichols occurred, upon a bright, cold morning in February when the road in question was rough and

uneven. The deceased knew of the position and existence of the stump, which could be seen five hundred feet away.

Mr. Nichols was a mail-carrier, sixty-three years of age, a careful driver, who for twelve years before his injuries had been making two round trips every day over the highway in question. When injured he was driving a safe and gentle horse which he had been accustomed to drive for several months. His buggy and harness, in use at the time, were in good repair. When within about five hundred feet of the stump, and nearly opposite an oil-wagon standing on the easterly side of the road, the horse began to run, without any fault of the deceased. The horse continued to run, and when at the point where the stump stood the forward wheel of the buggy struck the stump, causing the deceased to be thrown out of the wagon with such force as to cause injury, from which he died on the afternoon of the same day. While the horse was running this distance of about five hundred feet, the decedent didn't appear excited or alarmed, but, with his hands holding both reins in the usual manner, he sat upright in the seat facing toward his horse and continued to pull on the reins. His efforts to stop or turn the horse were confined to a continuous pull upon the lines, which was sufficient to hold the horse under guidance and control and save the decedent from any peril.

From the place where the oil-wagon stood to a point about twenty-five feet north of the stump, the buggy followed the wheel tracks made by the usual course of travel. At this point the buggy left the wheel tracks, and continued on in a substantially direct line until the right-hand forward wheel struck the side of the stump about in the center.

One of the corrections asked is the striking out of paragraph 32 of the finding, which states that "the horse from the time he began to run until the buggy struck the stump was under the guidance and control of the deceased."

Paragraph 31 of the plaintiff's draft-finding, marked

*proven,* is this: "Had not the buggy been drawn against the stump, the deceased would have regained complete control of the horse." The manifest implication from this is that, shortly prior to the collision with the stump, the deceased had lost complete control of the horse. This is inconsistent with paragraph 32 of the finding. The driver of a buggy cannot properly be said to be in control of his horse unless his control be complete. It was a material question whether the deceased had control of his horse as it neared the stump; if he had not, he might have been unable to avoid it.

In view of the inconsistency which has been pointed out, and of the evidence set out in the record, paragraph 31 of the plaintiff's draft-finding is therefore to be regarded as the decisive statement in this particular, and, as already stated, it necessarily imports that, at the time of the collision, the horse was beyond control of the deceased.

One who is driving a horse which has got beyond his control, and is running rapidly in the direction of a dangerous obstacle in a highway, is necessarily in a perilous situation. It therefore follows that the statement in paragraph 29 of the finding, that the deceased "was in no peril from the running of the horse," must be stricken out.

The making of these corrections so essentially varies the conditions governing the conclusion of the trial court, that a new trial must be ordered.

There is error and a new trial is ordered.

In this opinion the other judges concurred.