APPEAL FROM PROBATE OF WALTER WILLIAMSON ET ALS.
(ESTATE OF WILLIAM WILLIAMSON).

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 8th—decided December 9th, 1937.

*Frank L. Wilder,* for the appellant (administratrix).

*Samuel Engelman,* for the appellees (appellants below).

MALTBIE, C. J.   This appeal is from a judgment of the Superior Court sustaining an appeal from the Court of Probate in Stratford accepting the account of Florence Williamson Barker as administratrix upon the estate of William Williamson and finding that, as his widow, she is his sole heir at law.   The reasons of appeal in the Superior Court alleged that Mrs. Barker, who at the death of the deceased was his wife and who has since married again, had forfeited any right to share in the distribution of the estate of the deceased because she had, before his death, abandoned him

within the meaning of § 5156 of the General Statutes, and also that she had for a like reason forfeited her right to an allowance made to her as the widow of the deceased. The Superior Court concluded that there had been such an abandonment and that she had forfeited and lost all rights to an interest in his estate as his widow, including a widow's allowance. The court adjudged that the appeal be sustained and the decree of the Court of Probate set aside, and from that judgment Mrs. Barker has appealed. We shall hereafter refer to her as the appellant.

We have not before us and, so far as the record discloses the Superior Court did not have before it, the account in question. From the fact that the same decree of probate ascertained that the appellant was sole heir of the deceased, we may perhaps assume that the account was a final one. The reasons of appeal state that on July 7th, 1936, the Court of Probate made an order for a widow's allowance to the appellant and the probate decree from which the appeal was taken was entered September 22d, 1936. As the only matters included in the probate decree were the allowance of the account and the ascertainment that the appellant was sole heir, any question as to the allowance due her as the widow of the deceased must apparently have been presented upon an item in the account wherein she, as administratrix, claimed credit for sums taken by her under the decree of July 7th, 1936. As far as any judgment of the Superior Court could affect that item, it could only go so far as to hold that it was not a proper credit. The court might have proceeded itself to settle the account and if the credit was improper to have disallowed it. *Reiley* v. *Healey,* 122 Conn. 64, 79, 187 Atl. 661. It did not do this, but merely sustained the appeal and set aside the probate decree. However, the

judgment finds "the issues" for the plaintiffs and this must be interpreted to mean that all the material allegations put in issue by the reasons of appeal were found for them. Practice Book, § 189; *DiBlasi* v. *DiBlasi,* 116 Conn. 699, 700, 163 Atl. 473. The reasons of appeal did put in issue the question whether the appellant by her abandonment had forfeited her right to a widow's allowance and the trial court apparently construed the appeal as raising the issue as to the propriety of allowing her credit for the sums taken under the order. In effect, therefore, the judgment in terms concluded that issue against her and the Court of Probate could not under it in any further account presented to it properly allow her credit for any sums taken by her as a widow's allowance.

An appeal might have been taken from the order of the Court of Probate making that allowance, but this was not done and consequently that decree was conclusive that at the time it was made the appellant was entitled to the allowance. *Delehanty* v. *Pitkin,* 76 Conn. 412, 56 Atl. 881; *Gill* v. *Bromley,* 107 Conn. 281, 285, 140 Atl. 721. As we pointed out in *Reiley* v. *Healey,* supra, the Court of Probate might have later revoked or modified its decree, but it has not done so. Whether the Superior Court might have exercised its equitable jurisdiction to hold the decree void because of fraud upon the part of the appellant in obtaining it or for other recognized grounds for attacking a judgment, we have no need to inquire because no such ground was alleged or proven. See *Folwell* v. *Howell,* 117 Conn. 565, 169 Atl. 199. Nor does the case before us present any such situation as we held in *Reiley* v. *Healey,* might authorize a Court of Probate to refuse credit in the account of an administratrix for a widow's allowance made to her. In so far as the judgment is

to be interpreted as in effect a decision that the appellant should not be allowed that credit, there was error.

Section 5156 of the General Statutes, which fixes the right of a surviving husband or wife in the estate of the other where the marriage occurred after April 20th, 1877, concludes with a provision: "Nor shall either party be entitled to such statutory share who, without sufficient cause, shall have abandoned the other and continued such abandonment to the time of the other's death." Whether there had been an abandonment within this provision of the statute presented a question of fact to be determined by the trial court upon evidence offered before it. *Kantor* v. *Bloom,* 90 Conn. 210, 213, 96 Atl. 974; *Alexander* v. *Alexander,* 107 Conn. 101, 107, 139 Atl. 685. The finding that there had been an abandonment in this case is conclusive if the court could reasonably reach it upon the facts properly found proven. To determine the facts which must be the basis of its conclusion, we look to the finding which it prepared to present the case to us on appeal.

Broadly stated, the situation which developed between the appellant and her husband was this: They were living together as husband and wife in a house in Stratford which he owned. In the spring of 1926 it was decided to convert it into a two-family house. Miss Elwood, a neighbor who lived across the street, invited them to stay with her till the alterations were completed, which it was expected would take only a short time, but which did, in fact, take several months. Mr. Williamson went to live at Miss Elwood's. The appellant stayed for a few weeks in the homes of friends of hers in the neighborhood and then moved to a house which she owned in Bridgeport. Thereafter Mr. Williamson continued to live at Miss Elwood's house and the appellant continued to live at

her house in Bridgeport until his death in March, 1936. The trial court concluded that when the appellant and her husband separated she voluntarily left his home with the intention not to return and not to resume her marital duties toward him or to claim her marital rights from him, and that she at that time intended to and did in fact abandon her husband and continued such abandonment for approximately ten years until his death. The correctness of this conclusion necessarily depended upon a consideration of all the facts proven at the trial showing the relationship existing between the appellant and her husband at the time of their separation and thereafter, particularly those bearing upon her intent. So we are brought to a consideration of the findings of the trial court with reference to these matters and the corrections and additions to it which the appellant claims ought to be made.

The finding is certainly susceptible to correction in a number of respects. Certain of the statements attacked, while strictly not without support in the evidence, are so formulated as to carry unjustified implications. One statement calls for particular mention. Beginning when the appellant's present husband was overseas during the war and continuing thereafter until 1923 a series of letters passed between him and the appellant in which they address each other in very affectionate terms; from January, 1934, to August, 1935, he was a boarder in her house in Bridgeport where she was living with a woman friend; and she married him about two and one-half months after her first husband's death. The finding states that these letters and facts are "highly suggestive of and point to an intimate illicit relationship" between the appellant and her present husband. If the trial court concluded that such a relationship was proven, it should have

so found; if it did not find it proven, this statement has no place in the finding. However improper it was for the appellant to write or receive the letters, they contained no definite suggestion of any adulterous relationship between the parties, and the trial court, upon the basis it states, could not properly find that such a relationship existed. It is significant that although, if it did exist, it would be a very important element in determining the intent of the appellant as regards a return to her husband, the trial court's memorandum of decision contains no reference to it.

The only circumstances the court has found bearing upon the original separation of the appellant and the deceased, aside from those we have stated, are that the appellant did not accept the invitation Miss Elwood extended to both of them to live at her house while the alterations in their home were being made; that the appellant assisted her husband to move by carrying over certain of his personal effects; and that she approved and encouraged his going there. There is no evidence to support the latter finding other than that she assisted him to move his personal effects, and the statement that she encouraged his removal carries an implication the record does not justify. The court refused to find, though requested, that the room the deceased occupied at Miss Elwood's was small and not suitable for two persons, a fact which has its basis in the testimony of Miss Elwood herself, a witness apparently none too friendly to the appellant. There is no finding, and in fact no evidence, that the deceased asked the appellant to go with him to Miss Elwood's or objected to her going to her friends or moving to Bridgeport. The finding implies, though it does not state, that the original separation was against the will of the deceased. This is without foundation in the

evidence, and the only reasonable conclusion is that they lived separately by mutual consent.

That is, however, not conclusive of the case before us. As pointed out in the *Kantor* and *Alexander* cases, the situation presented under the statute is not analogous to that where desertion is claimed as a ground for divorce, and even though a husband and wife separate by mutual consent an abandonment may take place within the meaning of the statute if thereafter the surviving spouse evince an intent not to resume marital relationship. As indicative of that intent the trial court has found the following facts: The deceased intended to occupy the ground floor of the house in Stratford with the appellant when the alterations were completed. Despite opportunities to rent it, he left it unoccupied for approximately eighteen months and he gave to a prospective tenant as a reason for doing so that he "expected the return of his wife." During the whole ten years of the separation, he continued at the house of Miss Elwood, waiting the return of his wife to the Stratford house. On July 6th, 1926, while the alterations were still in progress, the appellant sent the deceased a registered letter asking him to come to her house in Bridgeport and telling him where the keys could be found, and at such times "as she infrequently spoke to him" she asked him to move to Bridgeport. Except for the letter and "possibly a few visits" to her at the house in Bridgeport, and "perhaps meeting her on the street" he had no communication with the defendant. He did not see her for five years before his death. The appellant moved "practically all the furniture" in the house at Stratford to the one she owned at Bridgeport. She never visited the deceased at Miss Elwood's house and only once telephoned him. The deceased was seriously injured and this fact came to the attention of the appellant "while she lived at

Bridgeport." Miss Elwood had seen the appellant in the company of at least a number of different men when unescorted by the deceased. In addition to the letters already referred to as passing between the appellant and her present husband, he boarded with her at her home in Bridgeport, frequently visited her after he left her home and married her two and one-half months after the death of her first husband. The deceased disapproved of the letters which passed between the appellant and her present husband and reproached her for them.

The finding that the deceased gave as a reason for not renting the ground floor of the Stratford house that he "expected the return of his wife," was not a correct statement of the testimony of the tenant, nor did it accord with Miss Elwood's version of the same conversation, stated in the finding as though it referred to a different conversation with the deceased. Statements of circumstances which may possibly or perhaps have happened have no place in the finding. That the deceased did not see the appellant for five years before his death may not be said to be without any support in the evidence, but its sole basis is a statement Miss Elwood attributed to him and it is opposed by the direct testimony not merely of the appellant but also of two witnesses having no interest in the case other than perhaps friendship for her. While the evidence would support a finding that the appellant took some furniture from the house in Stratford to Bridgeport, it does not appear that she moved "practically all the furniture." The finding that the injury to the deceased came to the attention of the appellant "while she lived in Bridgeport" is supported by no testimony other than that of Miss Elwood, who said that she tried to telephone the appellant but received no reply and that later, at some unstated time, the appellant

telephoned him, testimony which should have been considered in the light of the appellant's own statement that at this time she was out of the State and did not learn of the illness until it was over. The statement that Miss Elwood had seen the appellant in the company of at least a number of different men when unescorted by the deceased is only supported by Miss Elwood's testimony and with the possible exception of a reference to the appellant's present husband, had to do with a period before the separation, the place where the appellant met these men was in her own home, sometimes the deceased was present and at least one of them was a particular friend of his, and while the testimony was being offered the trial court itself interpolated that the fact that the deceased was not with her did not show he did not know of her meeting them. The trial court's memorandum of decision supports the finding that the deceased disapproved of letters passing between the appellant and her present husband and reproached her for them by reference to "the well known reactions of human nature" and the fact that subsequently he placed the letters which had come into his possession in the care of Miss Elwood for safekeeping, with instructions not to let them fall into the hands of his wife. Generalities as to the reactions of human nature to such a situation are hardly a basis for the finding and the circumstances of his placing the letters in Miss Elwood's keeping is open to too many explanations to be of weight in sustaining the finding of the trial court.

A detailed examination of the finding makes it evident that it does not present an accurate picture of the relationship between the appellant and the deceased and does not afford support for the conclusion of the trial court. Under the circumstances we have no course open as regards the issue of abandonment

except to remand the case for a new trial. *Nichols* v. *Manchester*, 82 Conn. 619, 74 Atl. 935; *Lowe* v. *Hendrick*, 86 Conn. 481, 484, 85 Atl. 795; *Haugh* v. *Kirsch*, 105 Conn. 429, 432, 135 Atl. 568.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.