LILLIAN M. GERMAN *v.* JOHN W. GERMAN.

MALTBIE, C. J., HINMAN, AVERY and BROWN, Js.[1]

[1] By agreement of counsel the case was argued before and decided by four judges.

Argued October 6—decided December 7, 1938.

*William Hanna,* with whom was *Herbert B. Wanderer,* for the appellant (defendant).

*Sidney Vogel,* for the appellee (plaintiff).

MALTBIE, C. J.   In this action the plaintiff, divorced from the defendant by a decree of a New York court in 1916, is seeking equitable relief to compel payment of alimony awarded her in the divorce proceedings. The defendant has appealed from a decision specifically decreeing that he forthwith pay to her the amount of

alimony which had become due under the order of the New York court.

An appeal from a judgment entered in this case upon the plaintiff declining to plead over after a demurrer to the complaint had been sustained has been before us, and we held that our courts had equitable jurisdiction to enforce a decree for alimony made by the courts of another state. *German* v. *German,* 122 Conn. 155, 188 Atl. 429. Such a remedy needs no support by proof of an independent equity, but the very nature of the proceedings is sufficient to bring it within the proper field of equitable remedies. A decree granting relief would be "none the less equitable because it is sought in the form of a money payment." *Grand Lodge of Conn.* v. *Grand Lodge of Mass.,* 81 Conn. 189, 201, 70 Atl. 617. Like a decree for alimony awarded in a judgment of divorce rendered in a court of this state, the decree ordinarily would be enforced, if payment were not made, by proceedings in contempt. *Lyon* v. *Lyon,* 21 Conn. 185. A court sitting in equity may, however, if the specific remedy claimed is inappropriate, render a judgment simply for damages, enforceable as in an action at law by execution. *State* v. *Sunapee Dam Co.,* 72 N. H. 114, 55 Atl. 899; 1 Pomeroy, Jurisprudence (4th Ed.) p. 374. One of the reasons which may bring about this result would be the fact that the defendant would not be able to perform the act ordered by the court; *County of Mobile* v. *Kimball,* 102 U. S. 691, 707; Pomeroy, Op. Cit.; for a court of equity will not make a decree which it has no power to enforce. *Morris* v. *Peckham,* 51 Conn. 128, 133.

The defendant claimed that he had no funds in possession or concealed with which to pay the arrears of alimony which were due. The trial court, however, concluded that the defendant was a man of large

means, well able to pay his obligations but having his assets so concealed as to make them unavailable to legal process, and that he possessed assets to the value of at least $15,000 which he had concealed by placing them in his wife's name, in order to put them beyond the reach of legal process and the plaintiff's claims. While there seems to have been some misconception on the trial as to the precise issues determinative of the right of the plaintiff to specific relief, if these conclusions were properly reached the judgment must stand. On the other hand, they clearly were the basis upon which the trial court proceeded in its decision to grant such relief, and if they were not properly reached the judgment cannot be sustained.

Without going into the details of the finding upon which the trial court reached its conclusion and which would require correction in some other respects than those we shall mention, the court has found these essential facts: The defendant had been employed from 1915 to 1931 with one company, receiving from 1915 to 1923 $5000 a year, thereafter $10,000 a year until about 1928, and $15,000 a year until 1931, and in addition bonuses aggregating in all $25,000. Since 1931 he has not been employed except upon his own farm. Between 1917 and 1922 the defendant purchased five parcels of land in Redding, Connecticut, comprising about fifty-six acres, with buildings thereon, and invested about $15,000 in these lands; title to three parcels was taken in the name of the defendant, to one parcel in the name of his present wife, and to the other in the names of both; and in 1922 he quitclaimed all his interest in the lands to his wife. In 1926 the defendant entered into a trust agreement with a New York bank and deposited insurance policies and other things of value with it; through this trust he maintains $125,000 of insurance on his life and he purchased

and disposed of more than $102,000 of additional insurance; on February 11, 1929, he made another trust agreement with the same bank, depositing insurance policies with a cash value of $3420 and securities with a value of $2600; in 1931 the cash value of the insurance policies in the trust was $7326.25 and of the securities $3700, and until 1931 he paid $300 monthly into this trust. These two trusts were interrelated and the trustee treated them as one. In 1927 the defendant's present wife also entered into a trust agreement with the same bank and deposited with it more than $20,000 in cash, during the next four years added $10,000, and in 1929 deposited securities costing $3000 or more; this trust is still alive and pays income of not less than $800 which she has never used but allowed to accumulate. She had, before marriage, been employed as a stenographer, earning from $1000 to $5000 a year; she had received $600 on the death of her father but had no property except savings from her salary and this sum; and the trust fund she created consisted of cash and things of value received by her from her husband.

Both the defendant and his present wife testified that the lands were purchased by her and she paid all of the purchase price, except that he testified that he paid $500, although she denied this. The trial court evidently did not believe these witnesses and inferred that the defendant was the real purchaser and owner of the lands. We could not have questioned such a conclusion except for certain statements in the trial court's memorandum of decision, which we may consult to determine the basis of its action, which were repeated in the finding. In the memorandum it appears that the trial court took judicial notice of a file of another action between the parties which had been brought to the Superior Court in the same county

where the present action is pending; that in the file it found a report of a committee appointed, after judgment had been rendered against the defendant and execution had been returned unsatisfied, to examine the defendant as to his property and means of paying the judgment; that in the report the committee stated that the defendant had testified to a fact which was later proved and admitted by him to be untrue; and the trial court, characterizing this as a "deliberate untruth," took it into consideration as bearing upon the credibility to be accorded the defendant's testimony. The court had the right to take judicial notice of the file of the earlier case. *McCleave* v. *Flanagan Co.*, 115 Conn. 36, 38, 160 Atl. 305. But this does not mean that it might use every statement it found in the papers constituting the file with the same effect as though the facts were in evidence before it. It should not have taken into consideration the statement in the report of the committee as to the untrue testimony of the defendant. The effect of untrue statements made by a witness upon his credibility depends upon the extent to which they were consciously false. *Craney* v. *Donovan*, 92 Conn. 236, 246, 102 Atl. 640; 2 Wigmore, Evidence (2d Ed.) § 1013. If in any case a conclusion of one trier that a witness before him testified falsely should be considered as affecting the credibility of the same witness when testifying in another case, the action of the trial court in this instance deprived the defendant of any opportunity to explain or justify any untrue statements he may have made. The finding of the court that the defendant and not his wife was the purchaser of the property is vitiated by its improper consideration of the statement in the report as affecting the credibility of the defendant's testimony.

As to the two trust agreements made by the defendant, the trial court has in effect found that they created

one trust, and the conclusion is inescapable from the evidence that the second succeeded the first and the fund constituting both of them included the same insurance policies. The finding that the defendant through the trust "maintains" $125,000 insurance on his life is contrary to the uncontradicted testimony of an official of the bank which was the trustee that these policies, in default of money in the trust to pay the premiums, had been converted into term insurance; and while the evidence supports the cash value stated in the trial court's finding of these policies at the times mentioned, there is no finding as to their present cash value, if any. The finding that the defendant took out additional policies of insurance amounting to $102,000 is supported by the evidence, but the finding that he had disposed of them implies that he realized value for them; and this has no support in the evidence. As to the trust established by the defendant's present wife, the finding that the income had been permitted to accumulate has support in the evidence only to the extent that "to begin with" the income was not paid to her but was invested. As to both of these trusts, the more important circumstance is, however, that they are shown by the exhibits in evidence and made a part of the finding to be irrevocable, so that the defendant apparently could not realize anything from them. Without going into detail, it follows that the necessary corrections in the finding so destroy the basis of the trial court's conclusions that a new trial must be ordered. *Nichols* v. *Manchester,* 82 Conn. 619, 622, 74 Atl. 935; *Haugh* v. *Kirsch,* 105 Conn. 429, 432, 135 Atl. 568; *Swift & Co.* v. *People's Coal & Oil Co.,* 121 Conn. 579, 586, 186 Atl. 620.

The defendant assigns error in the admission in evidence of an offer made by his attorney in a conversation with the plaintiff and her attorney to pay her

$1000 to cancel the agreement for payments of alimony incorporated in the divorce decree and of certain statements that the defendant's attorney made in connection therewith. The defendant had referred the matter to his attorney with instructions to use his own judgment. The offer was within the broad authority so conferred and the statements do not appear to be so irrelevant to the subject-matter entrusted to him as to be without its scope. *Carrano* v. *Hutt*, 93 Conn. 106, 113, 105 Atl. 323; *Loomis* v. *New York, N. H. & H. R. Co.*, 159 Mass. 39, 44, 34 N. E. 82; 2 Mechem, Agency (2d Ed.) §§ 1780-1782.

In passing we note that the judgment after decreeing the payment forthwith of the sum found due, directs that if this payment be not made an attachment for contempt be issued against the defendant. The basis of such contempt proceedings would be the failure of the defendant to obey the decree and they should not be brought until such a failure has occurred, for the reasons well stated in *Sherwood* v. *Sherwood*, 32 Conn. 1, 14.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.