# DAISY PARKS KLINE

*vs.*

# LEONARD W. KLINE

Superior Court        Hartford County        File No. 67673

MEMORANDUM FILED MARCH 13, 1945.

*Robinson, Robinson & Cole,* of Hartford, for the Plaintiff.

*Birmingham & Kennedy,* of Hartford, for the Defendant.

INGLIS, J.   On June 10, 1932, a decree was entered in the District Court for the County of Douglas in Nebraska whereby the plaintiff was divorced from the defendant.   A certain property settlement and agreement entered into by the parties on September 4, 1931, as modified by an agreement of May 31, 1932, was approved by the court and the provisions thereof were made a part of the decree.   One of the provisions of the 1931 agreement was that the defendant pay into court for the support of the plaintiff and their minor son the sum of $43.10 per week.   The 1932 agreement had modified this amount to $30 per week, commencing June 19, 1932 and continuing until modified by the court.   On December 20, 1932, upon written stipulation of the parties, the alimony and support order was modified by the court to the effect that the defendant should then pay $49 to cover certain medical expenses, and from and after December 19, 1932, he should pay into court the sum of $25 per week.   Since that time there has been no court order modifying the decree.

The total amount of such payments which accrued from December 20, 1932, to February 8, 1945, the date of the trial of this case, is $15,775.   From the time that the first contract became effective until the present, the total amount which the defendant has paid into court is $4,497.50.   Of this $2,539.90 was paid on account of payments falling due on December 19,

1932, and prior thereto, leaving the amount of $1,957.60 as payments to be credited on account of payments due since December 20, 1932. This leaves a balance due at the date of trial of $13,817.40.

The defendant made payments under the decree quite regularly down to April, 1933. By that time, however, he had lost his former job, and from then until March, 1935, he was not regularly employed and made payments only infrequently. In March, 1935, he was about to take new employment. The plaintiff having been pressing him for payments, he then represented to her that if she continued to press him, it would probably result in his losing his job. As a result it was verbally agreed between them that if she would not take immediate steps to force him to pay the past due amounts or those which might accrue in the future, he would assign a policy of life insurance to her and from then on would make payments regularly at the rate of $10 per week. He did assign the policy, and on that the plaintiff realized about $300. He thereafter did make some payments desultorily but, on the whole, by August, 1941, he was in arrears in his $10 per week payments by about $2,500, and on the whole judgment by about $9,500.

In August, 1941, the son of the parties was about to enter Nebraska University and the plaintiff was desirous of procuring an assurance from the defendant as to what she could count upon financially toward paying for the boy's education. She telephoned the defendant (who was then living in Hartford) from New York. In this conversation the defendant agreed that he would send the plaintiff $45 per month and she agreed that she would not come to his employer and make trouble for him. Pursuant to this understanding, the defendant made three payments of $45 each. Two of these payments were sent after the defendant had received a letter from the plaintiff dated October 10, 1941. In that letter she told him that she had discovered that she would need $65 per month for the boy's education. Thereafter when it became apparent that she was going to insist upon $65 per month, he stopped his remittances, and this suit was started in May, 1942.

The evidence does not justify a finding (as claimed by the defendant) that on either of the occasions of March, 1935, or August, 1941, the plaintiff agreed that she would waive all alimony past due at those dates or all future alimony in excess

of the amounts the defendant agreed to pay in the future. On both occasions the situation clearly was one in which the plaintiff was seeking to collect as much as possible of what was due her and was to become due her. She was willing to take smaller amounts than the judgment called for rather than start additional proceedings and thereby jeopardize the defendant's earning ability and therefore his ability to pay anything. It was her intention, however, to take those payments only on account. She had no intention to waive permanently the balance of what was due or would become due in the future and she never expressly agreed to do so. Her letter of October 10, 1941, makes it clear that this is so, at least so far as the August, 1941, agreement is concerned.

The defendant's first contention is that the divorce decree merely approved an agreement previously entered into by the parties and made no explicit order to the defendant to pay, so as to give the agreement the force of a judgment. The answer to that is that whatever question there may have been about the interpretation of the original judgment on this matter, the modification of that judgment entered December 20, 1932, does contain an express order that the defendant pay $25 per week thereafter.

Another claim of the defendant is that the agreements of March, 1935, and August, 1941, each operated to modify the judgment. As is found above, such was not the purport of either of those agreements. Neither of them purported to modify the judgment nor did they in effect do so. They related simply to the method of collection of what had become due and was to become due under the judgment. The defendant claims that each of these agreements constituted an accord and satisfaction of the amounts due under the judgment to date. Even though there had been an express agreement on the plaintiff's part in March, 1935, to forgive all of the arrearages upon the assigning of the insurance policy and the agreement to pay lesser sums in the future, that would not constitute an accord and satisfaction which would discharge the original judgment. The plaintiff's claim under the judgment was a liquidated claim. Clearly the intention was not to substitute the contract for the judgment. At best for the defendant, therefore, the agreement might have been one to accept in lieu of a liquidated amount a smaller amount payable in instalments. That would not constitute an accord and satisfaction but rather an execu-

tory accord which would not discharge the original obligation at least until the instalments were paid in accordance with the agreement. *Halloran vs. Fischer,* 126 Conn. 44; *Milici vs. DiFrancesco,* 122 *id.* 267. The same is true concerning the agreement of August, 1941. Accordingly, even though the defendant had proved that the plaintiff on the occasion of either of the agreements had definitely agreed to forgive arrearages and accept a lesser sum in the future, there would have been no consideration for that agreement and, particularly in view of the fact that the defendant in neither case kept his side of the agreement, it could not have precluded her from collecting on the judgment.

The defendant also suggests that those agreements either constituted a waiver or operated as an estoppel. Neither of these claims is tenable. A waiver is an intentional relinquishment of a known right, and, as found above, the plaintiff did not intend to waive her rights permanently under the judgment. An estoppel arises only out of conduct which misleads another to his prejudice. *Halloran vs. Fischer, supra; DuCotey vs. Wilkenda Land Co.,* 100 Conn. 255. Moreover, a promissory statement respecting future action cannot ordinarily form the basis of an estoppel unless, possibly, it is made with the express intent to mislead. *Weidemann vs. Springfield Breweries Co.,* 78 Conn. 660. Here, whatever promise the plaintiff may have made was not made with any intention to mislead. It was made in good faith. And certainly it did not induce the defendant to do anything to his own disadvantage. The only thing which he did in reliance thereon was something less than he was bound to do anyway.

The final contention of the defendant is that circumstances have so changed that it would be inequitable to enforce here and now the Nebraska decree. If such were the case that would of course justify this court in refusing to do so. *German vs. German,* 125 Conn. 84. However, the only substantial change in the situation is one which occurred just prior to the institution of the action. In November, 1941, the son enlisted in the United States Army Air Force, and at some later time became self-supporting. He became of age in November, 1944. It also appears that the plaintiff is now gainfully employed. It does not appear, however, that she was not employed at the time of the decree or how much she is now earning. By the terms of the judgment the allowance of $25 per

week is to cover the support of both the wife and the son together. In view of this fact and in view of the fact that the change in the son's condition measured in money is so slight compared with the total accruals of allowances remaining unpaid, it would hardly be equitable to withhold the enforcement of the Nebraska judgment on that ground.

*German vs. German,* 122 Conn. 155, establishes a precedent for this case. It is there laid down that a wife in whose favor a judgment for divorce and alimony has been entered in a sister state, that being a judgment in the nature of a decree in equity, may come into the Superior Court in this State as a court of equity, and on that judgment obtain here such relief as equity may grant. A decree for alimony is enforceable by contempt proceedings in Nebraska. *Revised Statutes of Nebraska* (1943) §42-319. Equity here demands that the plaintiff be put in a position to enforce her judgment in this State by the same means as would be available on her judgment in Nebraska. That can be accomplished in equity by way of mandatory injunction.

Judgment may enter for the plaintiff, directing and enjoining the defendant to pay to her on or before June 1, 1945, the sum of $13,817.40, and that the plaintiff recover of the defendant her taxable costs.