**In re MICHAEL A. and Joseph A.**

**No. 87–218–Appeal.**

Supreme Court of Rhode Island.

Jan. 13, 1989.

Laureen Quarnto D'Ambra, Michael McCarthy, Dept. of Children and their Families, Francis B. Brown (Court appointed sp. advocate Unit), Providence, for plaintiff.

Nicholas Colangelo, Providence, Robert D. Oster, Guardian–Ad–Litem, Lincoln, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment of the Family Court terminating the respondents' parental rights to their two children. The facts of the case insofar as pertinent to this appeal are as follows.

The children who are the subject of this termination proceeding were also the subjects of earlier dependency proceedings that resulted in findings of dependency by agreement of the parties. The children, who were born on November 30, 1979 (Joseph), and April 12, 1981 (Michael), have been in the custody of the Department For Children and Their Families (DCF) and in foster care since April 7, 1980 and June 4, 1981, respectively. The dependency determination was based upon the admitted inability of the parents to care for the children by reason of mental deficiency.

Petitions to terminate the parental rights of the parents for both Joseph and Michael were filed by DCF on April 14, 1986, in the Family Court. The petitions alleged that the children had been in the care of a "licensed or governmental placement agency for a period of at least six (6) months" and that it was improbable that the children could be reintegrated into the parents' home in the foreseeable future. Additionally the petitions alleged that the parents were unfit owing to "emotional illness, mental illness, of such duration as to render it improbable for the parent[s] to care for the child for an extended time."

The petitions were heard by a justice of the Family Court beginning November 13 through November 19, 1986. After the taking of evidence from four witnesses, including a social/case worker, a forensic psychologist, a teacher, and the executive director of the Rhode Island Association for Retarded Citizens, the trial justice rendered an oral decision granting the peti-

tions for termination of parental rights. In his decision he expressed the opinion that the state had proven by clear and convincing evidence that the parents were unable to care for these children by reason of their urfitness because of mental deficiency. He further found that these conditions would not change in the foreseeable future even though DCF had made all reasonable efforts to reunify the children with their parents. From the entry of judgment terminating parental rights the parents have taken this appeal. The parents have raised two major arguments. It will be necessary for us to consider only the first argument. Additional facts necessary to deal with this issue are as follows.

In the course of the trial justice's decision, he referred extensively to three reports that had not been admitted into evidence in the termination proceeding, but which were filed at the time of the original dependency proceedings. These reports were submitted by Dr. Ando I. Suvari, a psychiatrist, Dr. Joseph M. Zucker, a psychiatrist, and Robert A. Raphael, who held a master's degree in social work and performed an evaluation for Delta Consultants. These three written reports all indicate unequivocally that the parents were unable to care for these children. At least two reports suggest that neither the mother nor the father would be able to provide a minimum standard of acceptable child care and that the natural parents "can learn little or nothing by experience that last and lack the necessary foresight and capacity to relate emotionally for this baby." Although these reports were written approximately four to five years prior to the termination proceedings, the trial justice appeared to base his decision at least in part upon the suggestion contained in the reports that these parents were inherently unable to respond to reasonable efforts at reunification.

Although the trial justice referred to these reports in the course of his oral decision, he did so by way of a review of the history of the case leading up to the initiation of the termination proceedings. He did not state the basis for his considering the reports or say that they had been brought to the attention of the court, save that the inference might be drawn that they were part of the Family Court file, that had been maintained in respect to these parents and children.

Even though the trial justice did not purport to take judicial notice of these reports, DCF now argues that he might appropriately have done so since these were in the realm of "adjudicated facts" of which the court might properly take judicial notice at any stage of the proceedings.

There is no question that Rhode Island has long recognized the doctrine of judicial notice in its various manifestations. *See, e.g., Colonial Plumbing and Heating Supply Co. v. Contemporary Construction Co.,* 464 A.2d 741 (R.I.1983); *Caldarone v. State of Rhode Island,* 98 R.I. 7, 199 A.2d 303 (1964); *Landi v. Kirwin & Fletcher,* 52 R.I. 57, 157 A. 301 (1931). One aspect of the doctrine of judicial notice is that a court may take judicial notice of its own records including issues and decisions in a prior proceeding involving the same parties. *Perez v. Pawtucket Redevelopment Agency,* 111 R.I. 327, 302 A.2d 785 (1973); *Morrissey v. Piette,* 96 R.I. 151, 190 A.2d 1 (1963). This case was tried prior to the effective date of the Rhode Island Rules of Evidence that were subsequently adopted by the Supreme Court of Rhode Island effective October 1, 1987. Therefore, the question of judicial notice, as it applies to this case, will of necessity be determined in accordance with law in effect prior to the adoption of those Rules of Evidence.

There seems no question that the trial justice had every right to review the prior occurrences in the case. The parties had agreed to the dependency determinations that had taken place years earlier. However, the three reports by expert witnesses to which the court made extensive reference were never introduced into evidence during the dependency proceedings and certainly were not introduced into evidence or even offered into evidence during the termination proceedings.

Not every document that may have been placed in a court file at some time during the course of proceedings may properly be regarded as part of the record. *People v. Rubio,* 71 Cal.App.3d 757, 766, 139 Cal. Rptr. 750, 756 (1977); *Kaplan v. Hacker,* 113 Cal.App.2d 571, 574, 248 P.2d 464, 466 (1952); *German v. German,* 125 Conn. 84, 89, 3 A.2d 849, 851 (1938).

In determining the quantum of evidence necessary in the adjudication of termination of parental rights, a court must utilize fundamentally fair procedures that meet the requisite of due process. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). This requirement would include in the normal course of events that evidence should consist of testimony of witnesses who would be subject to cross-examination by the parties, and exhibits or other documents admitted into evidence in accordance with normal rules of evidentiary procedure. It is also important that parties be permitted to explain or comment upon evidence that may be prejudicial to their interests. *See German v. German,* 125 Conn. 84, 3 A. 2d 849 (1938). In this instance, the parents had no opportunity to cross-examine the authors of the reports. Nor did they have an opportunity to explain or rebut the opinions stated therein. It appears from the record that the parents and their counsel were not aware that the trial justice would consider these reports until he adverted to them in his oral decision.

The general rule that allows a court to take judicial notice of its own records may not be expanded to allow the court to take judicial notice of every document, paper, or report that at some time has been placed in a court file. The rules of hearsay cannot be overcome by an expansive application of the doctrine of judicial notice. The Rhode Island Rules of Evidence, which were adopted subsequent to the hearings in this case, would not change this result.

Rule 201 which purports to deal with adjudicative facts, reads in pertinent part as follows:

"(b) *Kinds of Facts.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(c) *When Discretionary.* A court may take judicial notice, whether requested or not.

(d) *When Mandatory.* A court shall take judicial notice if requested by a party and supplied with the necessary information.

(e) *Opportunity to be Heard.* A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken."

■ Even though this rule does not specifically deal with the matter of judicial notice of a court record, it would by clear implication only apply to those aspects of a court record that cannot be reasonably disputed. These would include judgments previously entered by the court that have the effect of res adjudicata, *see Perez, supra,* pleadings or answers to interrogatories by a party, which pleading or answer might constitute an admission (whether or not superseded by a later pleading or answer), *see Nichols v. Nichols,* 126 Conn. 614, 13 A.2d 591 (1940). Although the foregoing examples do not purport to be exhaustive, they would obviously not include expert's reports that may have been submitted to the court at some prior time but were never incorporated into a pleading, and never admitted into evidence and whose authors were not subjected to cross-examination. Consequently the reliance by the trial justice even in part upon these reports and other statements not in evidence constituted prejudicial error.

We are mindful that there was an abundance of other evidence in the case that tended to show that the parents were disabled by reason of mental deficiency from caring for these children either at the time of the hearing or at any time within the

foreseeable future. The difficulty is that we cannot determine whether the trial justice rested his determination upon the record properly in evidence before him or whether he rested it in substantial part upon these reports and statements that were not in evidence and which cannot be properly judicially noticed.

For these reasons we believe that the case must be remanded to the trial justice for two possible alternative courses of action. First, the trial justice may, if feasible, expand the record by allowing the presentation of competent testimony from the authors of these reports with attendant right of cross-examination and rebuttal by the parents. Second, if it is not feasible to expand the record by presentation of this testimony, then the trial justice may formulate a new decision based solely upon the evidence that was properly presented in the course of the prior hearings. He may then determine whether, relying upon that evidence alone, the state has proven by clear and convincing evidence that the parents are unfit by reason of "[e]motional illness, mental illness, mental deficiency * * * as to render it improbable for the parent to care for the child for an extended period of time. * * * [And] that the integration of the child in the home of the parent[s] is improbable in the foreseeable future due to conduct or conditions not likely to change." General Laws 1956 (1984 Reenactment) § 15–7–7(b)(i) and (c).

For the reasons stated, the judgment of the Family Court is hereby vacated and the papers in the case are remanded to the Family Court for further proceedings consistent with this opinion.