[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Purtill, Purtill Pfeffer for plaintiff.
Ford, Oberg, Manion Houck and Stephen S. Chinitz Associates for defendant.
These motions are the plaintiff's postjudgment motion to modify alimony and the defendant's motion for contempt. The motions were heard jointly by the court.
On April 24, 1991, the court, Dunn, J., dissolved the parties' marriage and rendered judgment which incorporated the provisions of a separation agreement entered into by the parties on the same day. Among the terms of that agreement was the following provision concerning alimony:
 The parties agree that the Husband shall pay the sum of $700.00 bi-weekly from the date of the execution of this Agreement to continue for a period of five (5) years. The parties further agree that this provision shall be non-modifiable except in a written Agreement signed by both parties. The Wife and Husband expressly agree that they shall not petition the Court for a modification in alimony regardless of any change in either parties financial status. The payments of $700.00 bi-weekly for five (5) years from the date of the execution of this Agreement shall terminate upon the death or remarriage of the Wife. The Wife further agrees that she will not seek to extend the five (5) year alimony payments under any circumstances except in a writing agreed to by both parties, and the wife further agrees that she shall not independently petition the court for an extension thereof. CT Page 8162
 The Husband agrees that he shall not seek to shorten the five (5) year alimony payments under any circumstances, except upon the death or remarriage of the Wife, or her cohabitation with a member of the opposite sex as defined by Connecticut Statute except as in a writing signed by both parties.
The court finds the following facts to be proven by clear and convincing evidence. At the time of the dissolution the defendant was, in actuality, living with Stephen P. Male at her residence in Hebron. The defendant intentionally kept this arrangement hidden from the plaintiff and urged Male to limit his activities so as to prevent the plaintiff from uncovering the relationship. Although the defendant characterizes Male's activities as merely a frequent visitor to that residence, the court finds the contrary testimony of Male to be more credible and persuasive. Male stated that he and the defendant were living together at the defendant's residence in Hebron on April 24, 1992, until the defendant and Male moved to North Carolina together.
In order to conceal her relationship with Male from the plaintiff, the defendant had Male park his car some distance from the residence and had him communicate with his friends and associates away from the residence. Male cooperated with the defendant in these endeavors, and the plaintiff remained unaware of the cohabitation.
In June 1992, the defendant and Male moved to a new residence in North Carolina. In order to avoid detection with respect to her cohabiting with Male, the defendant lied to the plaintiff regarding her true destination and instead informed the plaintiff that she was moving to West Virginia to live with her aunt. The defendant arranged with an aunt in West Virginia to support this ruse by having the aunt pretend the defendant had actually moved to her home. The aunt was to relay correspondence and messages from the plaintiff to the defendant in North Carolina without revealing the defendant's whereabouts to him. Also, the defendant had Male maintain a Connecticut phone number so as to throw off anyone who might otherwise connect the simultaneous absence of both Male and the defendant.
During the time Male lived with the defendant in Hebron and in North Carolina, they shared living expenses, household chores, took trips together, discussed marriage, and were sexually CT Page 8163 intimate. The defendant explained to Male she needed to conceal her living arrangement with him from the plaintiff because cohabitation would trigger a possible termination of alimony under the settlement agreement. At the hearing, the defendant attributed her admitted efforts to deceive the plaintiff about her residing in North Carolina to motives other than financial ones, the court rejects her testimony in this regard. Instead, the court credits Male's version of events which was that the defendant's motivation for perpetuating the fraud on the plaintiff was to avoid the potential loss of alimony based on cohabitation.
By December 1993, the relationship between the defendant and Male also deteriorated. On January 7, 1994, Male and the defendant parted ways, but this parting was less than cordial. Litigation concerning the division of personal property ensued. Sometime in February 1994, about one month after Male and the defendant ceased living together, Male contacted the plaintiff and educated him as to the charade that had been employed to keep the plaintiff unaware of the cohabitation. The plaintiff promptly sought legal assistance, and this motion to modify alimony was filed on March 30, 1994.
Because of financial reversals, the plaintiff had stopped paying alimony in January 1993. He has paid only $4100 since then, and a considerable arrearage has accrued. This arrearage is the basis for the defendant's motion for contempt which was filed April 12, 1994.
The court finds, by clear and convincing evidence, that the defendant committed fraud upon the plaintiff; that the fraud existed from the date of dissolution to the date the plaintiff learned of the cohabitation from Male in February 1994; that the fraud was knowingly perpetrated by the defendant to deceive the plaintiff regarding her true living arrangements with Male; that the purpose for the deception was to avoid the possible cessation of alimony payments; that the plaintiff relied upon the defendant's fraudulent conduct and communications to his detriment by failing to seek termination of the alimony order.
Motion for Modification
 I
If the plaintiff had moved to open the financial aspects of CT Page 8164 the judgment of dissolution because the judgment was obtained as a result of the defendant's fraud, the court would have no hesitation in doing so, Billington v. Billington,220 Conn. 212, 218 (1991); Kenworthy v. Kenworthy,180 Conn. 129, 131 (1980). The plaintiff requests no such relief, however. Instead, the plaintiff asks the court to enforce the agreement by allowing a retroactive modification of the alimony provisions. The plaintiff is constrained to ask for retroactive modification because, on the date the motion to modify was filed, March 30, 1994, the defendant and Male no longer lived together. As noted above, the plaintiff learned of the cohabitation after it ceased.
The plaintiff acknowledges that periodic alimony orders are generally modifiable only prospectively. The modifiability of such orders is controlled by General Statutes § 46b-86, in the absence of an agreement otherwise. That section, prohibits retroactive modification of alimony and support orders,Diamond v. Diamond, 32 Conn. App. 733, 740 (1993).
The plaintiff attempts to avoid the prohibition against retroactive modification by urging the court to adopt the reasoning and principles set forth in Milhalyak v.Milhalyak, 30 Conn. App. 516 (1993). In that case the obligee under a financial order had been cohabiting with another for a few years after dissolution of her marriage to the obligor. She never informed the obligor of this circumstance, but, eventually, he became aware of the cohabitation. The obligor filed a motion to modify or terminate his alimony obligation. The trial court terminated the alimony provision for the future but refused to make the termination retroactive. The Appellate Court reversed the trial court holding that the alimony obligation ought to have been terminated upon the date cohabitation commenced, Id, 521. The present plaintiff contends that the court ought to rule likewise. The court disagrees.
A critical factor in Milhalyak v. Milhalyak, supra, was that the separation agreement, and decree derived therefrom, ordered that "alimony will terminate upon . . . cohabitation." In that case, alimony automatically terminated, under contract law principles, upon the occurrence of cohabitation. The Appellate Court held that the motion to modify was unconnected to the power to modify under § 46b-86, but rather it was simply a method of enforcing the automatic termination provision of the agreement and decree. Because the authority to CT Page 8165 terminate the alimony fell outside the context of § 46b-86, no prohibition against recognizing that the alimony obligation ceased in the past existed.
That critical factor distinguishes the present case fromMilhalyak v. Milhalyak, supra, and warrants a different conclusion. In the present case, there is no automatic termination of alimony provision as existed in Milhalyak v.Milhalyak. supra. Here, the agreement and decree merely provide that in the event of the defendant's cohabitation, "as defined by Connecticut statute," the plaintiff may "seek to shorten the five (5) year alimony payments." Clearly, this provision does not terminate the alimony order upon cohabitation. Instead, it provides an opportunity for the plaintiff to seek to modify the length of the order if the defendant should cohabit.
The plaintiff contends this distinction is immaterial in that he is seeking an enforcement of the agreement rather than pursuing relief under § 46b-86. The court rejects this contention. First, the court views this claim with a jaundiced eye. The plaintiff's motion for modification specifically cites § 46b-86(b) in paragraph 3, and that paragraph tracks the language of § 46b-86(b). It appears clear to the court that the plaintiff brought this motion for modification under the authority of § 46b-86.
But more importantly, § 46b-86 is the only procedural method under which the plaintiff could "seek" to shorten the alimony term. The plaintiff asserts that, because the opportunity to modify the term arises from the agreement, he, therefore, has an independent method to seek modification. This argument warrants further scrutiny of the agreement provision regarding alimony.
Article IV of the agreement orders the plaintiff to pay the defendant $700 biweekly for five years. It also provides that neither party can attempt to modify this order for any reason except that the plaintiff can seek to shorten the five year term upon the defendant's death, remarriage, or cohabitation.
Essentially, the plaintiff argues that his right to "seek" such a modification under Article IV generates a right to modify alimony outside the ambit of § 46b-86. He claims that the agreement confers upon him a contractual right to seek modification unfettered by the dictates of § 46b-86. He CT Page 8166 supports this view by pointing out that the agreement precluded modification of alimony except under limited circumstances.
The language of Article IV itself makes no reference to the method by which modification might be sought. Contrary to the plaintiff's position, the court feels that the limited opportunity to seek modification is still controlled by §46b-86. The court arrives at this conclusion from an examination of the language of Article IV and the language of § 46b-86.
Article IV, § 4.1 of the agreement states that the "Wife and Husband expressly agree that they shall not petition the Court for modification of alimony. . . ." By what, legal method could the parties petition the court for modification except under that provided by law, viz. § 46b-86. That subsection also states "the Wife further agrees that she shall not independently petition the Court for . . . an extension [of the term] thereof." Again, the defendant could only request an extension of the term of the alimony order under § 46b-86, the statute governing modification of alimony. If the parties meant by their agreement to create a method to modify alimony over and above that already provided by law under § 46b-86, the agreement could have explicitly stated that to be the case. The absence of such language in the agreement supports the view that the restrictions against modification which are contained therein were only meant to limit when recourse to § 46b-86
might be had and not to create a new and independent means to modify alimony.
If the plaintiff's interpretation were to be adopted, then every agreement placing any limits or qualifications on the modifiability of financial orders would have the effect of removing modifiability from the auspices of § 46b-86 and generating an independent mechanism for modifying those orders. Our appellate courts have handled appeals in such cases and still used § 46b-86 as the measure of the trial court's decision. See e.g. Simms v. Simms, 25 Conn. App. 231 (1991). Also, this interpretation directly conflicts with the language of § 46b-86 itself. Subsection (a) of § 46b-86 begins "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony . . . may at anytime thereafter be continued, set aside, altered or modified by said court . . .," (emphasis added). The use of the phrase "and to the extent that" implies that motions to modify alimony, in cases where modification may CT Page 8167 be partially restricted, are still governed by § 46b-86
except to the extent that the agreement and decree preclude modification. Thus, by its language § 46b-86 contemplates its application to all alimony orders except and only to the extent such orders are deemed unmodifiable by the decree.
The court holds that the plaintiff's opportunity to seek to shorten the five year term of alimony is governed by § 46b-86
and does not exist independent of that statutory provision. The plaintiff stands in a very different position than did the obligor seeking to enforce the automatic termination aspect inMilhalyak v. Milhalyak, supra, 520.
 II
The question then arises as to whether the defendant's fraudulent concealment of her cohabitation creates an exception to the rule prohibiting retroactive modification of alimony under § 46b-86. The pertinent language of § 46b-86(a) is as follows:
 "No order for periodic payment of permanent alimony . . . may be subject to retroactive modification . . . ."
This statutory statement contains no exception from the prohibition of retroactive modification for cases of fraud. The plaintiff cites no case law which engrafts such an exception to the statutory rule of nonmodifiability.
As noted above, the power of the court to vacate a judgment procured by fraud is inherent and independent of statutory provision authorizing the opening of judgments,Kenworthy v. Kenworthy, supra. The plaintiff does not seek to vacate the financial orders portion of the judgment, however. Rather, he wishes to circumvent the unambiguous language of § 46b-86(a) which forbids retroactive modification of alimony. "Although the law will intervene to insure that substantial justice is done where fraud has been perpetrated, the frequency and extent of this intervention must be tempered by a sometimes conflicting adjudicative proposition that mandates the ultimate conclusion of all legal controversy,"Jucker v. Jucker, 190 Conn. 674, 677 (1983).
The conclusiveness of the statutory rule prohibiting retroactive modification of alimony and support orders is CT Page 8168 exhibited in the case of Darak v. Darak, 210 Conn. 462
(1989). There, the obligee under financial orders moved to modify those orders upward to reflect the enhanced income of the obligor and the decrease in her resources. The obligor defended against this action by claiming that the change in circumstances alleged was contemplated by the parties at the time of dissolution. Between the date of dissolution and the filing of the motion to modify, however, a new law was passed overturning the bar to modification based on previous contemplation of change.
The trial court addressed the issue of retrospective applications of the new law and found that it applied to the case before it. As a consequence, the trial court granted the motion to modify and increased the payments owed by the obligor. About three months later, the trial court reconsidered this ruling, reversed itself, and ruled that the new law was inapplicable. This reversal by the trial court was upheld on appeal, Id, 473. The trial court attempted to rectify its earlier erroneous ruling by giving the obligor credit for the additional sums he paid under the mistaken ruling. Our Supreme Court identified this credit as, in effect, a retroactive modification of the court's erroneous order, Id, 479. The Supreme Court disallowed this credit despite its "remedial" nature because § 46b-86 clearly prohibits retroactive modifications, Id.
If the statutory prohibition against retroactive modification was sufficient to nullify a trial court's attempt to correct its mistake which had disadvantaged an obligor, it would seem that the prohibition also blocks this court from retroactively modifying an alimony order sustained by fraudulent means. Therefore, the court holds that the prohibition against retroactive modification of alimony contained in § 46b-86(a) bars the court from granting the plaintiff's motion to modify despite the fraud committed by the defendant.
The plaintiff's motion to modify alimony retroactively is denied.
Motion for Contempt
A dissolution of marriage action, although a creature of statute, is essentially equitable in nature, Rubin v.Rubin. 204 Conn. 224, 228 (1987); Guss v. Guss,1 Conn. App. 356, 363 (1984). Postjudgment proceedings brought to CT Page 8169 enforce a decree of dissolution are also equitable in nature,German v. German, 122 Conn. 155, 163 (1936);German v. German, 125 Conn. 84, 86 (1938); Yontefv. Yontef, 185 Conn. 275, 292 (1981); Beveridge v.Beveridge, 7 Conn. App. 11, 16 (1986). A motion for contempt to enforce financial orders arising from a dissolution decree are equitable in nature, Papcun v. Papcun,181 Conn. 618, 620 (1980); German v. German, 125 Conn. 84,86 (1938); German v. German, 122 Conn. 153, 163 (1936).
One who seeks to prove that she is entitled to the benefit of equity must first come before the court with clean hands,Sachs v. Sachs, 22 Conn. App. 410, 416 (1990). The doctrine of "clean hands" applies to domestic relations cases,Sachs v. Sachs, supra; Hooker v. Hooker,130 Conn. 41, 51 (1943). The doctrine holds that whatever the nature of the proponent's claim and relief sought, if that claim grows out of or depends upon, or is inseparably connected with the proponent's own fraud, a court of equity will generally deny the equitable relief sought, Pomeroy, Equity Jurisprudence
(5th Ed.), § 401.
As indicated above, the court has found, by clear and convincing evidence, that the defendant perpetrated the fraudulent concealment of her cohabiting with Male during a substantial portion of the period of time for which she now claims the plaintiff to be delinquent, viz. from January 1993 to January 1994. The court has found that the purpose of the defendant's concealment was to prevent the plaintiff from exercising his option to seek to terminate alimony on the basis of changed financial circumstances resulting from the defendant's cohabitation. But for this fraud the plaintiff would have exercised this option. The defendant's actions prevented the plaintiff from doing so in a timely manner and caused him to lose his opportunity to demonstrate a change in the defendant's financial resources and needs as a product of cohabitation. Having fraudulently deprived the plaintiff of this opportunity, the defendant fails to come to the court of equity with clean hands.
The defendant's motion for contempt is, therefore, denied.
Sferrazza, J. CT Page 8170