SARAH KANTOR *vs.* BERNARD BLOOM, ADMINISTRATOR, ET ALS. (SARAH KANTOR'S APPEAL FROM PROBATE).

First Judicial District, Hartford, January Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A finding that the alleged widow of a Connecticut decedent, who claimed a statutory share of his estate, had abandoned him without sufficient cause and had continued such abandonment to the date of his death, thereby forfeiting her right to a share of his property (§ 391), necessarily assumes the validity of their marriage, although the trial court did not undertake to determine that question.

Abandonment of one spouse by the other is a question of fact whose determination by the trial court is conclusive.

A wife who voluntarily leaves her husband with an intent not to return to him and not to resume her marital duties or claim her marital rights, thereby "abandons" him within the meaning of that word in § 391 of the General Statutes. This intent need not be formed before or at the moment of separation; if it is formed afterward and is then acted on, the abandonment is then complete.

While a separation of husband and wife pursuant to agreement does not amount to an "abandonment," the mere existence of such an agreement does not, under § 391, constitute a "sufficient cause" for an actual, total renunciation of marital rights and duties, continued for years and until the death of one spouse, accompanied with adulterous conduct meanwhile upon the part of the surviving claimant. Under such circumstances—which was practically the present case—the survivor can have no claim to a statutory share of the decedent's estate.

The obvious purpose of the last clause of § 391 was the protection of intestate estates from the technical but unjust claims of surviving husbands and wives who, without sufficient cause, had in fact permanently abandoned their marital rights and duties; and to effectuate this purpose the word "abandonment" should be construed accordingly, and not as equivalent to "desertion" in our divorce statute, § 4551.

In the present case the decedent, the alleged husband, had also remarried and was equally guilty of adultery. *Held* that such wrongful conduct upon his part was of no avail to establish the plaintiff's claim to a part of his estate.

Argued January 11th—decided March 15th, 1916.

Kantor *v.* Bloom.

APPEAL by the plaintiff, the alleged widow of Solomon Rubin, from the refusal of the Court of Probate for the district of East Windsor to remove the defendant Bloom as administrator upon said Rubin's estate, taken to and tried by the Superior Court in Hartford County, *Burpee, J.;* facts found and judgment rendered affirming the action of the Court of Probate, from which the plaintiff appealed. *No error.*

The finding shows that the plaintiff, Sarah Kantor, and one Solomon Rubin went through a form of marriage ceremony in Russia in 1879, and lived together there as husband and wife for about seven years, and had three children born there. About 1886 Rubin came to this country, and in 1889 or 1890 the plaintiff and the children joined him here. The plaintiff and Rubin continued to live together as husband and wife until the spring of 1893, when, in consequence of domestic quarrels which finally culminated in Rubin calling the plaintiff a vile name and telling her to get out, the plaintiff left Rubin and his home. About two months afterward Rubin and the plaintiff, who are both of the orthodox Jewish faith, went before a rabbi in Brooklyn, who, after an ineffectual attempt at reconciliation, performed the ceremony of rabbinical divorce. Shortly afterward Rubin contracted a rabbinical marriage with another woman; and later, in the same year, the plaintiff also contracted a rabbinical marriage with one Kantor, with whom she has ever since lived, and still lives, as his wife, and to whom she has borne two children. Rubin died intestate, in South Windsor, in August, 1911, and the plaintiff applied to the Court of Probate claiming to be his lawful widow and, as such, entitled to her statutory share of his estate under § 391 of the General Statutes. The Court of Probate held that she was not entitled to her widow's share, on the ground that she had abandoned Rubin

without sufficient cause and continued such abandonment until his death. From this decree the plaintiff appealed to the Superior Court, which dismissed the appeal because it reached the conclusion that the plaintiff, without sufficient cause, abandoned Solomon Rubin as her husband, if he was ever legally her husband, and continued such abandonment to the time of Rubin's death, and therefore was not entitled to any share in his estate.

The material portion of § 391 reads as follows: "Nor shall either party be entitled to such statutory share who, without sufficient cause, had abandoned the other, and had continued such abandonment to the time of the other's death."

*Charles D. Lockwood* and *Theodore G. Case*, for the appellant (plaintiff).

*Lewis Sperry* and *Harry W. Reynolds*, for the appellees (defendants).

BEACH, J. It is assigned as error that the trial court refused to pass upon the question of the validity of the plaintiff's Russian marriage to Rubin, although her reasons of appeal alleged that she was Rubin's lawful widow, and her standing in court depended on the truth of that allegation. The reason for this omission appears from the record to be that the trial court, at or near the close of the plaintiff's case, suggested that the plaintiff's own testimony had made out a clear case of abandonment on her part, and that it would therefore be unnecessary to pass upon the validity of the Russian marriage. The appellee, acting on that suggestion, offered no evidence. In thus failing to pass upon the validity of the Russian marriage there was no error, especially none of which the plaintiff can complain; for

the determination of the case upon the sole ground of abandonment, necessarily assumed that the plaintiff was Rubin's widow, and we shall assume that to be the fact on this appeal.

Some of the exceptions for refusals to find as requested seem to proceed on the erroneous theory that the office of the finding is to recite evidence; and as we look at the case, none of the exceptions to the finding are material.

Abandonment is a question of fact, and the finding or conclusion of the trial court is conclusive of that fact. Abandonment of a wife has been defined by this court as the act of a husband who voluntarily leaves his wife with an intention not to return to her and not to resume his marital duties toward her or to claim his marital rights. *Moore* v. *Stevenson*, 27 Conn. 14, 25. The intent to permanently discard all marital rights and duties need not be formed before or at the moment of separation. It may be formed afterward, and if then acted on, the abandonment is complete. This plaintiff has twice solemnly and ceremonially renounced all her marital rights and duties toward Rubin, once by the rabbinical divorce of 1893, and again by the rabbinical marriage to Kantor in the same year; and for seventeen years has lived with Kantor as his wife, has borne him children, and still continues to live with him. A more complete case of an actual abandonment of the lawful husband cannot well be imagined.

But the plaintiff claims that in point of law there can be no abandonment of a wife or husband based upon the consent of the abandoned party. She claims that the original separation was at the invitation or command of Rubin; that the rabbinical divorce of 1893 was in legal effect an agreement by the parties for a permanent separation, with permission to marry again according to the custom of their religion; and that the

subsequent rabbinical marriage of the plaintiff to Kantor, followed by seventeen years of married life in Kantor's home, being with the consent of the lawful husband, could not in law amount to the abandonment of him. The principle relied on is stated by Bishop as follows: "A married partner who concurs in the other's going away cannot complain of the going. In consequence whereof, a separation by the mutual consent of the parties is not desertion in either." 1 Bishop on Marriage, Divorce & Separation, § 1690.

We think, however, that the principle rests on broader grounds than those of estoppel, and that the underlying reason why separation by mutual consent can never amount to desertion which will give ground for a divorce, is that the State has an interest in the maintenance of the marital status and in the mutual observance of its essential obligations. *Boland* v. *O'Neil,* 72 Conn. 217, 220, 44 Atl. 15. It is alleged, on the authority of *Clark* v. *Clement,* 71 N. H. 5, 51 Atl. 256, that an agreement for separation between husband and wife conclusively establishes that at the time of the agreement the husband did not abandon his wife; and further that there can be no abandonment of the wife so long as she continues to consent to the separation. We agree, of course, that an agreement for separation cannot, in and of itself, work an abandonment, nor will a continued separation in pursuance of such a contract amount to an abandonment unless and until some independent fact intervenes—such as the wife's adultery in this case—from which the abandonment may begin to run; but we cannot agree that such an agreement is in point of law a sufficient cause, under our statute, for a total actual abandonment of marital rights and duties continued up to the death of one of the consorts. In this case, for example, the wife has been guilty of conduct which, but for this supposed

agreement for separation, would admittedly forfeit her statutory share in her husband's intestate estate.

Turning now to the consideration of § 391, the plaintiff's argument assumes that the word "abandonment" in this section means the same thing as the word "desertion" in our divorce statute, § 4551. On the other hand, the defendant claims that the word "abandonment" in § 391 means the same thing as the same word in § 4543, which deals with the property rights and personal rights of a wife married before April 20th, 1877, when abandoned by her husband. It was held in *Moore* v. *Stevenson*, 27 Conn. 14, 25, that the word "abandonment" in the Act of 1853, now § 4543, referred to an abandonment in fact, not necessarily a desertion within the meaning of our divorce statute. Section 391 must also be so construed in order to effectuate its obvious purpose, namely, the protection of intestate estates from the technical but unjust claims of surviving husbands and wives who have, without sufficient cause, abandoned their marital rights and duties and continued such abandonment to the time of the other's death. Again, the language of § 391 shows that it was not intended to be limited to cases of desertion, for the very suggestion that there may be "sufficient cause" for abandonment indicates that the latter word includes abandonments which may, as well as those which may not, be justifiable according to the circumstances of the particular case. Thus, an absence from the husband's home continued so long as to require the conclusion that it was intended to be final and permanent, might, nevertheless, be justified by showing that the wife was driven away by intolerable cruelty, and continued to live apart from a reasonable fear of its renewal. It may be that such an absence, unaccompanied by aggravating circumstances, would be justified by showing that it was in pursuance of a mutual

agreement for separation, especially if the wife still remained dependent upon the husband for support, or the continuance of the marital status was otherwise recognized.

But "a voluntary separation is not a license to commit adultery" (*Franklin* v. *Franklin*, 154 Mass. 515, 517, 28 N. E. 681), and if the wife, after such an agreement for separation, lived in adultery with another man up to the death of her lawful husband, that would surely amount to an abandonment "without sufficient cause," within the meaning of § 391. In *Wildman* v. *Wildman*, 72 Conn. 262, 271, 44 Atl. 224, we said "it would not be fraudulent to deprive an unfaithful wife of dower"; and for the same reason it must follow that a widow who was absent from her husband at the time of his death, by his consent, would not be entitled to dower, under § 386, if it were shown that she had been living in adultery during such absence. The argument applies with equal force to § 391.

This plaintiff, by throwing aside the mantle of her religion and claiming now to be the lawful widow of Rubin, necessarily characterizes her rabbinical marriage with Kantor as adulterous; and if we regard the rabbinical divorce of 1893 as an agreement for a permanent separation, it is not a sufficient cause for the plaintiff's living in adultery with Kantor until Rubin's death. The fact that Rubin himself has contracted a rabbinical marriage which was in law adulterous, will not help the plaintiff, for although two wrongs may sometimes bar a remedy, they do not make a right. Of course, the plaintiff can have no standing in this or any other court founded on the claim that the rabbinical divorce was a mutual license to commit adultery.

It seems to us that this case presents an abandonment within the meaning of the statute. The rabbinical divorce between Rubin and the plaintiff was a separa-

tion with intent never to resume their marital rights or duties, and that intent was clinched by the subsequent rabbinical marriages of both parties. In point of fact the abandonment by the plaintiff was complete and continued up to the death; and to permit the plaintiff to share in the estate which Rubin accumulated during the seventeen years while she was living as the wife of another man, and so to diminish the shares of Rubin's children, would be to perpetuate the very injustice which the legislature intended to prevent. Moreover, the finding is that the plaintiff is still living with Kantor, as his wife, and it is not impossible, though we express no opinion on the point, that in case of Kantor's death she might claim her widow's share of his estate. See *Chamberlain* v. *Chamberlain*, 68 N. J. Eq. 736, 62 Atl. 680, 3 L. R. A. (N. S.) 244 and note.

There is no error.

In this opinion the other judges concurred.