NEWTON W. ALEXANDER, ADMINISTRATOR, *vs.*
MAY NICHOLS ALEXANDER.

Third Judicial District, Bridgeport, October Term, 1927.

WHEELER, C. J., HAINES, HINMAN, BANKS and FOSTER, Js.

The case was presented to the trial court and this court upon
   the theory that an abandonment which under § 5055 of the Gen-
   eral Statutes works a forfeiture of the statutory share of a sur-
   viving husband or his wife in the other's estate, also operates
   as a bar to the granting of an allowance under the same statute
   and under § 5024 for support during the settlement of the estate.
   *Held* that there was no occasion for this court to determine the
   correctness of the construction of these statutes adopted by the
   parties.
Abandonment is the act of a husband or wife who voluntarily leaves
   the other with an intention not to return and not to resume his
   or her marital duties or to claim his or her marital rights.
The intent to abandon need not exist before or at the moment of
   separation; it may be formed afterward, and if then acted on,
   the abandonment is complete.
Section 5055 of the General Statutes should be construed to effect
   its obvious purpose, namely, the protection of estates from the
   technical but unjust claims of surviving husbands and wives
   who, without sufficient cause, have abandoned their marital
   rights and duties and so continued to the time of the other's
   death.
Abandonment presents a question of fact, the determination of which
   by the trial court is conclusive.
Marital rights and duties are those which arise from the contract of
   marriage and constitute its object; they, therefore, embrace
   what the parties mutually agree to perform toward each other
   and to society.
The obligation of a husband to support his wife, imposed by § 6416
   of the General Statutes, is suspended by her unjustifiable aban-
   donment of him.
The trial court found that, in August, 1922, the defendant intended
   to and did abandon her husband, the plaintiff's intestate, with-
   out sufficient cause, and continued to do so for about eight
   months, when he persuaded her to return; and that about
   September, 1924, she again formed a definite intention to aban-
   don him, did in fact do so, and continued such abandonment
   until his death in April, 1926. *Held* that this finding was sup-

ported by the evidence and justified the trial court's conclusion that the defendant was not entitled to an allowance for support pending the settlement of her husband's estate.

The mere payment by the husband, and acceptance by the wife, of money after she has left him without sufficient cause, is not sufficient to negative the character of the separation as an abandonment within the meaning of the statute.

Argued October 25th—decided December 12th, 1927.

APPEAL by the plaintiff from an order and decree of the Court of Probate for the district of Waterbury, allowing to the defendant the sum of $100 per month for her support and maintenance pending the final settlement of the estate of her husband, taken to the Superior Court in New Haven County and tried to the court, *Baldwin, J.;* judgment rendered sustaining the appeal and revoking the order and decree of the Court of Probate, from which the defendant appealed. *No error.*

*Walter E. Monagan* and *Maurice T. Healy, Jr.,* for the appellant (defendant).

*Richardson Bronson,* for the appellee (plaintiff).

HINMAN, J. Clearness and brevity will be promoted by a consideration, concurrently with our recital of the salient facts as found by the trial court, of the corrections of the finding which are sought. The appellant and Louis A. Alexander intermarried February 3d, 1921. Appellant was the third wife of Mr. Alexander, his first two wives having died; appellant had been married once previously and had divorced her first husband in 1920. After their marriage they lived together in Waterbury until, in late July or early August, 1922, Alexander, with the knowledge and approval of his wife, went on a vacation trip with Newton Alexander, his son by his first wife. Upon his return, August 14th, 1922, Alexander found that

his wife had departed from the home, taking practically all of her personal effects and the household furniture. He did not know where his wife had gone or the reason for her departure, but wrote to her at the address of her daughter in the State of New York and ultimately a desultory correspondence was carried on between them. In some of her letters Mrs. Alexander complained that she had to do too much work; in others that he failed to give her adequate presents and incurred unnecessary expenses; in still others, of the need of redecoration of the house and new furniture. In this correspondence Alexander repeatedly requested his wife to return. These facts are supported by evidence and may not be stricken out as appellant requests. Nor can there be added the vigorously disputed claim that she left because of threats made by or fear of her husband. It appears to be undisputed that, at the time of leaving, she stored the furniture and personal belongings which she removed, in a warehouse in Waterbury, subsequently used them in an apartment in Hartford, where she lived with her daughter, and, when she went to Chicago, stored them in Hartford. These facts are added.

Mrs. Alexander's absence continued until the spring of 1923, when she and her husband met on the street in Waterbury, and he informed her that the house had been redecorated and new furniture installed, and urgently requested her to return. She visited the house, was pleased with the improvements, and remained a night and a day. Thereafter she came to the house over week-ends, usually at intervals of two to three weeks, and continued to do so until August, 1924, but brought back none of her personal effects other than wearing apparel required for a few days' use. The further fact that, on these week-end so-

journs, Mrs. Alexander lived and cohabited with Alexander is added, at appellant's request.

At the time of Mrs. Alexander's departure in August, 1922, she left some unpaid accounts contracted in her husband's name and thereafter incurred further bills in New York stores. In October, 1922, Alexander had an interview with Mrs. Alexander's attorney, at the latter's request, as a result of which he agreed to pay her $40 per month, provided she would not contract further bills in his name. Subsequently the amount was raised to $60 per month, at the instance of Mrs. Alexander, and the payment of this sum continued until the death of Alexander, which occurred April 4th, 1926. The appellant seeks to have the finding as to this increase corrected to the effect that "on or about September 11th, 1923, the appellant's intestate agreed to pay his wife $60 per month for her support if she would live separate and apart from him and she so agreed." This, except the approximate date, is not an admitted or undisputed fact, but quite the contrary. There is ample evidence, including declarations and letters of the decedent, that the purpose of the original agreement and payments was to obviate the contracting of bills by Mrs. Alexander in her husband's name. The conduct of the parties affords strong indication that no new conditions or limitations were attached to the increase in amount of payments. It is undisputed that, at the time this increase was agreed to, they had been spending frequent week-ends together, as husband and wife, at the Alexander home, for several months, and this procedure continued, without substantial change, for about a year after the increase. The trial court might properly find as it did, in accordance with the evident understanding of the parties as manifested by their conduct. Such a finding involves no necessary inconsistency with the recol-

lection of Mrs. Alexander's attorney, or his letters to her informing her that her husband would pay her $60 monthly "if you will agree to live apart from him and take that amount as a full compliance on his part with his duty to support you. This, of course, means that you cannot charge any purchases against him." Even though this was the attorney's understanding, there is no compelling evidence that it was shared by Mr. Alexander, or communicated to him, or assented to by his wife, so far as concerned living apart, but the contrary is significantly indicated by their subsequent course of conduct.

At the end of the summer of 1923, Newton Alexander, decedent's son, having obtained a position as a teacher in Waterbury, returned to his father's house and lived there, with his wife after his marriage, August 9th, 1924, up to the time of the trial.

After the middle of August or early September, 1924, Mrs. Alexander never returned to her husband's house nor had communication with him, except that in November, 1924, she saw him with reference to voting, and at about that time met him on the street in Waterbury and in the office where he was employed. In December, 1924, Mrs. Alexander moved to Chicago, but the trial court states, "I cannot find that Mr. Alexander knew of her intention to go to Chicago or of the fact that she did go," and he continued, until his death, sending checks for his monthly remittance to her to Hartford. The appellant contends that she went to Chicago in December, 1925, but the finding of 1924 is convincingly supported by evidence and proper inferences therefrom, including the appellant's own uncertainty and contradictory testimony on this point.

Findings, sought to be inserted, as to the financial situation of the appellant and of her husband's estate, and the amount of allowance which would be reason-

able, are immaterial unless an allowance is to be granted.

The court finds, further, that Mrs. Alexander had no sufficient cause which justified her in abandoning her husband, but in August, 1922, intended to and did abandon him and continued the same for about eight months, when he pursuaded her to return; and that in September, 1924, or shortly before, she again formed a definite intention to abandon him, did in fact do so, and continued such abandonment up to the time of his death. On both occasions she left the house of her husband with the intention not to return, not to resume her marital duties toward him, and not to claim her marital rights from him. Mr. Alexander never consented to the separation.

From the subordinate facts found, the trial court reached the conclusion that Mrs. Alexander, having, without cause, abandoned her husband in August, 1924, and continued such abandonment during the remainder of his life—about twenty months—is not entitled to support pending the settlement of his estate.

This case was tried in the Superior Court, and appealed, and argued here, upon a construction of § 5055 of the General Statutes, inferentially advanced by appellant's second claim of law and assented to in the brief of the appellee, that the provision that abandonment works a forfeiture of the statutory share therein specified also operates as a bar to the granting of the allowance for sup'port, during settlement of the estate, which is provided for in this section as well as in § 5024. No occasion is afforded, therefore, for a discussion and determination of the correctness of the construction adopted by the parties.

The ultimate question, determinative of this appeal, is whether the subordinate facts set forth in the finding, with such corrections as have been granted, sup-

port and warrant the conclusion of a continuous abandonment within the meaning of the statute. We have defined abandonment as the act of a husband or wife who voluntarily leaves, with an intention not to return and not to resume his or her marital duties toward the other or to claim his or her marital rights. *Moore* v. *Stevenson,* 27 Conn. 14, 25. "The intent to permanently discard all marital rights and duties need not be formed before or at the moment of separation; it may be formed afterward, and if then acted on, the abandonment is complete." The statute (§ 5055) must be so construed as to "effectuate its obvious purpose, namely, the protection of . . . estates from the technical but unjust claims of surviving husbands and wives who have, without sufficient cause, abandoned their marital rights and duties and continued such abandonment to the time of the other's death." "Abandonment is a question of fact, and the finding or conclusion of the trial court is conclusive of that fact." *Kantor* v. *Bloom,* 90 Conn. 210, 213, 215, 96 At. 974.

The principal contention of the appellant is that Mr. and Mrs. Alexander lived separate and apart in pursuance of a condition, imposed by Mr. Alexander, of the agreement under which he made the monthly payments to his wife, to the effect that they should so live, that their continued separation was in pursuance of such agreement and so did not amount to an abandonment. Our refusal to add a finding that such a condition existed disposes of this claim, even if such an agreement be regarded "in point of law a sufficient cause, under our statute, for a total actual abandonment of marital rights and duties." Moreover, had such an agreement been found to exist, the change in relations which occurred in August or September, 1924, and the wife's removal to Chicago soon afterward,

without the consent or knowledge of the husband, followed by a permanent cessation of communication from her to him, might well be held to be the intervention of a new and independent fact from which abandonment began to run. *Kantor* v. *Bloom,* 90 Conn. 210, 214, 96 Atl. 974. The finding is devoid of any fact constituting sufficient cause for Mrs. Alexander's complete discontinuance of marital relations, in fact the contrary is expressly found, and the trial court's conclusion is not open to successful attack on the ground that the separation was not voluntary on her part.

The further claim stressed by the appellant is that the facts do not establish the other element of abandonment as above defined, viz., an intention on the part of Mrs. Alexander not to return to her husband, and resume her marital duties toward him or claim her marital rights. Marital rights and duties are those which arise from the contract of marriage and constitute its object; they therefore embrace what the parties to a marriage contract mutually agree to perform toward each other and to society. *Kilburn* v. *Kilburn,* 89 Cal. 46, 26 Pac. 636; 5 Words & Phrases (1st Ed.) !p. 4373. The facts found afford no tangible basis for a claim that Mrs. Alexander retained any intent to resume such duties or claim such rights, but sustain the opposite conclusion. As to this phase of the case, also, the appellant depends mainly upon the request to have embodied in the finding the existence of a mutual agreement to live separate and apart, to which we have been unable to accede. When, as it is found that she did, Mrs. Alexander absented herself from her husband without just cause, his obligation to support her was suspended. General Statutes, § 6416; *State* v. *Newman,* 91 Conn. 6, 9, 98 Atl. 346. Although he continued thereafter, from some motive which is conjectural only, to send money to her, her

passive acce'ptance thereof is not sufficient to negative such abandonment as is contemplated by the statute in question.

The finding sustains the conclusion which the court reached.

There is no error.

In this opinion the other judges concurred.