[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for termination of parental rights instituted in March of 1994, by Dennis W., the petitioner and father of Angellica W., hereinafter referred to as "Angel". The respondent is the female biological parent, Bethany S. This action was instituted in Probate Court for the District of Andover and was subsequently transferred to Superior Court for Juvenile Matters at Rockville. It was thereafter transferred to the Child Protection Session at Middletown for trial which commenced on December 18, 1996 and concluded after three days of testimony.
FACTUAL FINDINGS
The biological parents of Angel are Dennis W., now 33 years of age, and Bethany S., hereinafter known as "Beth", his former wife, presently 27 years of age. Dennis and Beth were married on CT Page 327 February 14, 1989. At the time of their marriage Beth was pregnant. She delivered a child, Daniel, on April 9, 1989, two months after their marriage. Approximately two months later on June 18, 1989, Father's Day, the child died under mysterious conditions at age 10 weeks. For lack of a more precise explanation, the cause of death was later described as sudden infant death syndrome. Two years previously, Beth had given birth to a child on October 31, 1987, Cassiopeia. That child died February 2, 1988 at age 4 months. An autopsy of that child was performed and the cause of death was believed to be bronchitis.
Approximately ten months after the death of Daniel, on April 7, 1990, Beth gave birth to her third child, Angellica. "Angel" is the subject of this termination petition.
During the first months of Angel's life, Dennis and Beth lived briefly with Beth's mother. However, in September of 1990, when Angel was about five months of age, Beth, Dennis and Angel moved into a low income facility known as the Executive Motor Lodge.
Beth was 21 years of age at the time, having come from a dysfunctional family situation which will be later described. Beth testified that her relationship with Dennis in the fall of 1990 was ". . strictly drugs, alcohol, friends and Nintendo." Beth said that when they moved into the motel they began free basing cocaine. Beth and Dennis argued frequently about Dennis' failure to help Beth, his lack of involvement in Angel's care, and his partying with friends rather than coming home after work. Dennis' unemployment check was used to pay the rent. Beth's AFDC check was used to buy drugs and alcohol. Nothing was available for formula and diapers. During this four month period living in the low rent motel, Beth felt bored, alone, frustrated, depressed and angry. She subsequently became enamored of a seventeen year old drifter who lived in his car. On December 27, 1990, Beth took her nine month old daughter, Angel, and ran off with her seventeen year old friend, Gary. Dennis had no idea where they had gone or when they would return. Dennis notified Beth's probation officer of his belief that she had run off with the 17 year old.
Approximately ten days later, Dennis received a phone call from Beth. She admitted that she was with Gary and that they were in the State of Virginia. She indicated to Dennis that she wanted a separation but that she was coming back to Connecticut. Within CT Page 328 a week thereafter she returned to Connecticut on public transportation arriving some fourteen hours after she left Virginia with Angel. Dennis indicated that when they returned Angel was hungry, her diapers were soaked, she had a rash, blisters on her genitals and he took her to the pediatrician the following day.
Beth informed Dennis that she wanted to remain separated and that she was going to Florida to stay with her grandparents. She announced that she was going to take Angel with her. Dennis convinced Beth that since she was on probation, and since Dennis had reported that she had been out-of-state, there was now a warrant out for her arrest for violating her probation. Dennis convinced Beth that if she was picked up by the police, the police would place Angel in foster care and that if she was going to go to Florida it was better if she left Angel with him. Since Beth did not want her child in foster care, as she had been placed in foster care herself, she agreed to leave Angel in Dennis' care in January of 1991. She has never had custody of Angel since that time. Since 1991 Beth has spent much of her time impaired by alcohol and, to a lesser extent drugs. She has also spent time off and on attempting to establish visitation with Angel. She has been thwarted in her efforts by Dennis, by the judicial system and mostly, by her own self destructive behavior.
Since January of 1991, Dennis left the motel and moved in with his mother. Dennis continued to live with his mother until September of 1992. Beth occasionally visited with Angel. In May of that same year, Dennis had become reacquainted with a high school classmate, Tracy Ruff, who subsequently assisted Dennis in caring for Angel. Dennis and Tracy were married on May 7, 1994. They have been living together raising Angel and it is their hope that, upon the termination of parental rights of Beth, Tracy will be in a position to adopt Angel. Even Beth admits that Tracy is viewed by Angel as her mother and that Angel is better off where she is. Therefore, there is no disagreement that Dennis and Tracy should continue to raise Angel. Rather, the issue presented is whether the parental rights of Beth should be terminated.
Initially, the petition requested a termination of parental rights based upon abandonment pursuant to General Statutes §45a-717 (f)1. On October 9, 1996, the petitioner moved to amend the petition to include the allegation that "there is no on-going parent child relationship as defined in General Statutes Sec.45a-717 (f), and to allow further time for the establishment or CT Page 329 reestablishment of the parent child."
When Dennis and Beth were married they entered the marriage equally unprepared for life, marriage, and parenting. Beth, prior to her marriage, had been in a series of foster homes, group homes and shelter placements during her minority. Those placements stemmed from a very dysfunctional home where she had been molested by her father.
Dennis entered the marriage with a juvenile, criminal and motor vehicle record, dropping out of school at age sixteen after attending one month of the 9th grade. His father was reported to be a severe alcoholic. He was the youngest of five children and his oldest sibling is twenty years his senior. Notably, Dennis denied any history of personal drug or alcohol abuse during his early interviews with the Department of Children and Families ("DCF") social workers regarding this case. The court believes he was completely untruthful to the social workers. He was much more candid about his extensive history of alcohol and cocaine abuse during his testimony in court. The court found his recollection of events in general to be much less reliable than that of his former wife, Beth.
Angel has lived with her father, Dennis, since January of 1991. On April 29, 1992, Dennis applied to the Manchester Probate Court for custody of Angel and also to have Beth removed as her guardian alleging that Angel had been abandoned. DCF investigated and in their first report found the allegations to be unsubstantiated because Beth had been visiting Angel on occasion. The court ordered custody to Dennis and visitation to Beth. A year later, on March 9, 1993, DCF submitted a second report to the Manchester Probate Court stating that Beth had made only one visit with Angel since August of 1992.
At the same time as the DCF report, March 9, 1993 Dennis filed for divorce against Beth in the Superior Court in Rockville and a dissolution of marriage was granted on June 21, 1993. It was an uncontested divorce and, while Beth had been served with the papers at the inception of the case, Beth did not appear in court for the final hearing. Beth maintained that she did not have notice of the proceeding. The court, in granting the dissolution of marriage at the request of Dennis, granted sole custody of Angel to the father and no visitation rights to Beth.
Eight months later, in February of 1994, Beth filed a pro se CT Page 330 motion to modify the court's order seeking visitation rights. This motion was assigned for a hearing on March 14, 1994. Dennis appeared with counsel, while Beth appeared pro se. The matter was referred to the Family Services Officer who declined any involvement in the case since he was told that a termination of parental rights action had been filed and was pending. Without a recommendation from the Family Services officer no action was taken on the motion to modify the decree of dissolution of marriage. Beth continued to be effectively denied visitation by order of the court. Beth immediately went that same day to the Probate Court in Manchester and obtained a statement from the clerk verifying that, indeed, no action for termination of parental rights had been filed in that court. When she returned to the Superior Court at Rockville on the same day with her exhibit, her pleas to the Family Services officer were unavailing. Clearly, Beth had applied to the appropriate court for relief. The Family Relations Officer would not entertain this dispute since he was told the Probate Court was in the process of terminating her parental rights. The Probate Court would not and could not modify an order of the Superior Court regarding visitation, especially since there was no action pending in that court. Beth was effectively precluded from changing the visitation order. The present action to terminate her parental rights was not actually filed until a week after she had sought to modify her visitation rights i.e., March 21, 1994 in the Probate Court for Andover.
The court finds that the last time Beth saw Angel was at a visit which was orchestrated and arranged by Tracy in July of 1993. It was arranged so that Beth could see her daughter at a Dairy Queen in Manchester, Connecticut. There were no visits in 1994, 1995 or 1996, nor did Beth have the right to visit during those years. The court further finds that at present there is a parent-child relationship between the stepmother, Tracy, and Angel and there is no on-going parent child relationship that exists between Beth and her daughter, Angel.
Other facts which bear upon this situation are the following. Beth had a son, Joshua, born to her on September 29, 1991. This child was removed from Beth immediately following the child's birth and was placed in foster care by DCF. Beth did not visit Joshua for four months even though she was permitted to do so. She did not visit Angel during this period of time either. Joshua remained in foster care until January 29, 1994 when he was returned to Beth under the protective supervision of DCF. CT Page 331
Beth did not remain free of substance abuse after Joshua was returned to her in January of 1994. As a consequence Beth's mother obtained guardianship of Joshua where he remains to date.
A little more than a year later, in June of 1995, Beth entered the Coventry House, a home for pregnant mothers with alcohol and drug related problems. Her fifth child, a daughter, Skyla, was born on June 28, 1995, probably while Beth was at the Coventry House, although this is not entirely clear from the record. By all accounts, Beth was doing well in the Coventry House program where she was to remain until May of 1996.
In November of 1995, after Beth had been in the Coventry House program for some five months, she learned that DCF was going to try to remove Skyla from her care. Beth fled the state with Skyla and went to Tennessee. She remained there until August of 1996.
On November 2, 1996, Beth gave birth to her sixth child, Briana, whom Beth brought each day to court and whom Beth nursed throughout the trial. Beth maintains that she has been sober for 19 months, that is, since entering the Coventry House in June of 1995. She currently has her 18 month old daughter, Skyla, and her two month old daughter, Briana, living with her.
ADJUDICATION
1. Abandonment
Abandonment, the first ground asserted by the petitioner is defined by General Statutes § 45a-717 (f)(1) as a parent's failure "to maintain a reasonable degree of interest, concern or responsibility as to the welfare of [his or her] child . . . ." The statutory definition differs from the common law concept of abandonment wherein an intent to abandon totally and permanently must be proved. See, e.g., Litvaitis v. Litvaitis, 162 Conn. 540,547, 295 A.2d 519 (1972); Kantor v. Bloom, 90 Conn. 210, 213,96 A. 974 (1916) In re Shannon S., 41 Conn. Sup. 145, 151,562 A.2d 79 (1989).
With respect to defining abandonment, the Supreme Court, in In re Juvenile Appeal (Docket No. 9489), 183 Conn. 11, 15,438 A.2d 801 (1981), stated that the commonly understood obligations of parenthood entailed the following minimum attributes: "`(1) CT Page 332 express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance.'" See alsoIn re Rayna M., 13 Conn. App. 23, 36-37, 534 A.2d 897 (1987). In the case of In re Michael M., 29 Conn. App. 112, 122,614 A.2d 832 (1992), the Appellate Court sustained the trial court's finding of abandonment where the mother maintained only irregular and sporadic contact with her children, made no effort to contact them for a period of five months, did not appear for scheduled visitation or explain her absence, rarely called the children and did not send cards, letters or gifts.
In the present case, Beth tried to contact Angel only sporadically during the child's infancy when it was of interest and convenient for her to do so. Long periods would elapse without any significant attempts to see the child. During the first two years of the child's life, Beth was content to allow her husband to assume full time responsibility for the care, custody and education of Angel. Beth pursued her personal, romantic and substance abuse interests with greater devotion and vigor, than establishing or maintaining a relationship with Angel. She completely abdicated her parental role. It appears that Beth's sole interest in Angel is to visit her only when it is convenient. Beth is contesting this case to satisfy her own needs and not those of her child, a child with whom she has no relationship. The court specifically finds that Beth abandoned Angel between January 1991 and January of 1994. While Beth did make some efforts at visitation after she was brought into the Probate Court by Dennis, she did not initiate the court action and when granted court ordered visitation, she did not follow through in a diligent, purposeful and consistent manner. Her failure to do so was in some measure a reflection of her substance abuse and also her focus on meeting her own needs rather than the child's needs. She has rarely, if ever, sent the child gifts or cards in the five years since 1991.
"The statutory standard is not whether the parents have shown some interest in their children. Common sense dictates that a parent's obligations toward his or her child go further than a minimal interest." In re Rayna, supra, 13 Conn. App. 36-37. The court finds that the evidence clearly and convincingly demonstrates that these minimal contacts and visits do not rise to the level of interest, concern and responsibility as to the CT Page 333 welfare of the child required by the statute. This child has been abandoned within the contemplation of General Statutes §§45a-717 (f)(1) and 17a-112 (b)(1).
2. No Ongoing Parent-Child Relationship
An absence of an ongoing parent-child relationship, the amended ground asserted by Dennis, has a two-pronged test as is evident from the language of General Statutes § 17a-112 (b) (4). Clear and convincing evidence must demonstrate the absence of a relationship "that ordinarily develops as a result of a parent having met on a day to day basis, the physical, emotional, moral and educational needs of the child. . . ." Clear and convincing evidence must also demonstrate that "to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to best interest of the child."
An absence of a parent-child relationship contemplates situations where a child has never known her or his parents so that no relationship ever developed between them or where the child has definitely lost that relationship so that despite its former existence it now has been completely displaced. In reJuvenile Appeal (Anonymous), 181 Conn. 638, 645, 436 A.2d 290
(1980); In re Juvenile Appeal (Anonymous), 177 Conn. 648, 670,420 A.2d 875 (1979). The court finds that there is no parent-child relationship between Beth and Angel. Proof of a lost or displaced relationship depends upon whether the child has present memories or feelings for the natural parent. In re JuvenileAppeal (Anonymous), supra, 181 Conn. 646; In re Juvenile Appeal(Anonymous), supra, 177 Conn. 670. At the present time, the terms "memories of" and "feelings for" refer to specific memories and positive feelings for the natural parent. In re Rayna M., supra,13 Conn. App. 34-35; In re James T., 9 Conn. App. 608, 616,520 A.2d 644 (1987); In re Juvenile Appeal (84-6), 2 Conn. App. 705,709, 483 A.2d 1101 (1984), cert. denied, 195 Conn. 801,487 A.2d 564 (1985); In re Shannon S., supra, 41 Conn. Sup. 158. The existence of positive memories and feelings depends upon the point of view of the child. In re Rayna M., supra,13 Conn. App. 35.
The Supreme Court has greatly circumscribed the use of this ground in cases where the lack of parent-child relationship is the "direct result" of a prior custody determination. In ReValerie D., 223 Conn. 492, 613 A.2d 748 (1992); In re Kelly S.,29 Conn. App. 600, 616-18, 616 A.2d 1161 (1992). The court CT Page 334 believes that the lack of relationship in this case is not a direct result of the custody orders, but rather a direct result of Beth's own conduct, her pursuit of personal pleasures rather than the self-sacrifice required to raise children and her voluntary release of the care of her child to Dennis. The initial court orders made in the probate proceeding set out a schedule for visitation which Beth failed to follow. These court orders did not thwart her from maintaining a relationship, the court orders enabled her to maintain the parent child relationship which had previously existed from the child's birth in April of 1990 until Beth's departure in January of 1991.
The second aspect of this ground requires the court to determine whether allowing further time to establish this relationship would be detrimental to the child. Common sense and the literature suggest that Angel should have permanency in her placement as soon as possible and that further delay would be detrimental to her. See generally, J. Goldstein, A. Freud A. Solnit, Beyond the Best Interests of the Child 99
(1979). The court concludes that the petitioner has established this ground by clear and convincing evidence.
DISPOSITION
The court makes the following factual findings pursuant to General Statutes § 45a-717 (h).
(1) The timeliness, nature and extent of services offered orprovided to the parent and the child by an agency to facilitatethe reunion of the child with the parent.
Appropriate and timely services were provided by an agency including counseling, substance abuse counseling and visitation coordination while Beth's other child was under the supervision of DCF. Beth was offered child and family services and substance abuse treatment through Coventry House. While the child Angel was not committed to DCF at any time, Beth's other children were subject to DCF's supervision, and services were provided to her through those agencies. She also received financial assistance from AFDC and town support.
(2) The terms of any applicable court order entered into andagreed upon by any individual or agency and the parent, and theextent to which all parties have fulfilled their obligations undersuch order.
CT Page 335
The only applicable orders entered into relate to visitation. The court finds that some obstacles were placed in Beth's path by Dennis and later by the family service officer's unwillingness to help her. The outstanding court probate court orders existing between April, 1992 and June, 1993, could have been enforced by Beth if she had a sincere wish to regularly and consistently visit Angel. Beth's biggest obstacles were her addictions and her desire for self-gratification. Beth did not use her very significant native intelligence and perseverance to maintain a relationship with her daughter.
(3) The feelings and emotional ties of the child with respect tohis parents, any guardian of his person and any person who hasexercised physical care, custody or control of the child for atleast one year and with whom the child has developed significantemotional ties.
At the present time, Angel has strong emotional ties with her stepmother, whom she knows only as her natural mother. Angel's father and stepmother have provided the physical, emotional and educational support she needs. Angel has no emotional ties to her biological mother, Beth. Furthermore, Angel has been able to establish a healthy, deep attachment because she feels secure in the emotional ties with her father and stepmother.
(4) The age of the child.
This child is 6 years of age. A child of this age requires stability of placement and continuity of care. Uncertainty is a corrosive condition for a child. A child requires a sense of personal security that results from belonging to a familial group. The court finds that there must be certainty, consistency and stability in Angel's life.
(5) The efforts the parent has made to adjust his circumstances,conduct, or conditions to make it in the best interest of thechild to return him to his home in the foreseeable future. etc.
This child is home. The biological mother seeks only to prevent adoption so that she may visit the child. This would place the child in a permanent state of impermanence. Beth has not made realistic and sustained efforts to conform her conduct to even minimally acceptable parental standards during the first three years of this child's life. There is no longer a parent-child CT Page 336 relationship between Beth and Angel. Preventing adoption to enable the biological mother an opportunity to reenter the child's life and at the same time prevent adoption, is not in the child's best interest. In re Luis C., 210 Conn. 157, 554 A.2d 722
(1989); In re Juvenile Appeal (Docket No. 9489), supra, 183 Conn. 15.
(6) The extent to which a parent has been prevented frommaintaining a meaningful relationship with the child by theunreasonable act or conduct of the other parent of the child, orthe unreasonable act of any other person or by the economiccircumstances of the parent.
While the biological mother's means were limited, economic factors did not prevent regular, continuing contact with the child. In fact, evidence presented shows that the child and parent lived in reasonable geographic proximity during the child's early years. The court order attempted to encourage contact. While the conduct of the father, Dennis, regarding visitation was not always flexible and accommodating to Beth, it was no different than many other cases of divorced parents. Beth could have been more persistent and aggressive in enforcing her visitation rights had she cared to do so. No other unreasonable conduct is noted. Beth showed little more than sporadic interest in maintaining her initial parent-child relationship. In re RaynaM., supra, 13 Conn. App. 23. Her plan to prevent adoption meets only Beth's needs and does not meet the child's needs.
Based upon the testimony presented and the exhibits offered in to evidence, the court finds by clear and convincing evidence that Angellica has been abandoned by her biological mother and that there is no ongoing parent child relationship within the meaning of General Statutes Sec. 45a-717 (f)(3). The court further finds that these grounds have existed over an extended period of time which is greater than one year. The court finds, based upon the testimony presented, that it would be in the child's best interest to terminate the biological mother's parental rights at this time. This finding is made after considering the child's sense of time, her need for a secure and permanent environment, the relationship that the child has with the father and stepmother, and the totality of circumstances. Inre Juvenile Appeal (Anonymous), supra, 177 Conn. 667-68.
DISPOSITION
CT Page 337
Based upon the foregoing findings, the court concludes that it is in the best interests of the child to terminate the parental rights of Beth S. Accordingly, it is ORDERED that the parental rights of Beth S. to the minor child Angellica are hereby terminated. The remaining parent, Dennis W., is hereby appointed the sole parent and guardian of the person of Angellica.
Foley, J.