MEMORANDUM OF DECISION
The Department of Children and Families (DCF) has filed a petition seeking to terminate the parental rights (TPR) of Diane J. and Willie C. with respect to Chantay C., born on April 3, 1996. The petition asserts the same four grounds for the termination of the parental rights of each parent. The four common grounds are: (1) that the child has been abandoned by the mother and father in the sense that the parents failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (2) that the child has been found in a prior proceeding to have been neglected and uncared for and that the mother and father have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child; (3) there is no ongoing parent-child relationship with respect to the mother and the father which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of the child; and (4) the mother and father of the child, under the age of seven years who is neglected or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families. With respect to both parents, the petition alleges that the grounds have existed for not less than one year.
DCF also has pending a petition alleging that Chantay C. has been neglected in that she has been abandoned and uncared for in that she is homeless. The petition was filed with the court on May 21, 1998. Willie C. has filed a motion to transfer guardianship of Chantay C. to the child's maternal grandmother. The parties agreed that the TPR petition, the neglect and uncared CT Page 11780 for petition, and the motion to transfer guardianship could be heard simultaneously.
The operative dates for the court's decisions on the TPR petition and the neglect and uncared for petition are as follows: adjudication of the TPR petition must be determined on the facts as of July 31, 1997 and the neglect and uncared for petition on the facts as of May 21, 1998, the respective dates of the filing of the petitions. Disposition must be determined on the facts as of October 8, 1998, the last day of trial.
After hearing testimony and reviewing the exhibits and court file, the court finds the following facts. Chantay C. was born on April 3, 1996. She tested positive for cocaine at birth and had difficulties associated with cocaine withdrawal, including problems with eating and breathing. On April 8, 1996, five days after her birth, the court, Sequino, J., granted an order of temporary custody to DCF. DCF also filed a neglect petition claiming that Chantay C. was being denied proper physical care and attention. On May 16, 1996, the court, Sequino, J., committed Chantay C. to the care and custody of DCF for a period not to exceed twelve months based on the court's finding that the child had been neglected. On May 24, 1996, DCF placed Chantay in the care of her maternal grandmother and she has been in her care ever since.
On May 28, 1997, the court, Brenneman, J., granted an extension of the commitment, retroactive to May 16, 1997, through May 16, 1998. The court also found that continued efforts to reunify Chantay C. with her parents were not appropriate.
On July 31, 1997, DCF filed the subject petition seeking the termination of parental rights of the respondents. A trial of the TPR petition commenced on March 4, 1998. The trial was scheduled to continue on April 9, 1998. However, the attorney for the respondent father subsequently requested a continuance which was granted by the court on April 8, 1998:
On May 16, 1998, the commitment of Chantay C. to DCF inadvertently lapsed. On May 21, 1998, DCF filed with the court an order for temporary custody together with a new neglect petition. The court, Jones, J., granted the order of temporary custody that same day.
The hearing on the TPR petition concluded on October 8, 1998. CT Page 11781 At that hearing, the parties agreed that the evidence submitted pursuant to the TPR petition could also considered in connection with the neglect and uncared for petition. Willie C., Chantay's father, was present throughout the trial. Diane J., Chantay's mother, has not been present in court for any of these proceedings.
 I. ADJUDICATION
In a proceeding for termination of parental rights, DCF must prove a ground alleged in the petition, as of the date of the filing or last amendment, by clear and convincing evidence. Inre Theresa S., 196 Conn. 18 (1985). See also General Statutes Section 17a-112(c) and Practice Book Section 34-3. Only one ground need be established for the petition to be granted. In reJuvenile Appeal (84-BC), 194 Conn. 252 (1985).
Abandonment, the first ground asserted by the petitioner, is defined by General Statutes Section 45a-717(g)(2)(A) and Section17a-112(c)(3)(A) as a parent's failure "to maintain a reasonable degree of interest, concern or responsibility as to the welfare of [his or her] child ...." The statutory definition differs from the common law concept of abandonment wherein an intent to abandon totally and permanently must be proved. See, e.g.,Litvaitis v. Litvaitis, 162 Conn. 540, 547 (1972); Kantor v.Bloom. 90 Conn. 210, 213 (1916) and In re Shannon S.,41 Conn. Sup. 145, 151 (1989).
With respect to defining abandonment, the Connecticut Supreme Court, in In re Juvenile Appeal (Docket No. 9489), 183 Conn. 11,15 (1981), stated that the commonly understood obligations of parenthood entailed the following minimum attributes: "(1) express love and affection for the child; (2) express personal concern over the health, education and general well being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." See alsoIn re Rayna M.. 13 Conn. App. 23, 36-37 (1987). In the case ofIn re Michael M., 29 Conn. App. 112, 122 (1992), the Appellate Court sustained the trial court's finding of abandonment where the mother maintained only irregular and sporadic contact with her children, made no effort to contact them for a period of five months, did not appear for scheduled visitation or explain her absence, rarely called the children and did not send cards, letters or gifts. "Where a parent fails to visit a child, fails CT Page 11782 to display any love or affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred." In re Migdalia M.,6 Conn. App. 194, 209 (1986).
"The statutory standard is not whether the parents have shown some interest in their children. Common sense dictates that a parent's obligations toward his or her child go further than a minimal interest." In re Ravna M., supra, 13 Conn. App. 36-37.
The court finds by clear and convincing evidence existing on the date of the filing of the petition that Chantay C. had been abandoned by Diane J. and Willie C. in the sense that they each failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. The court further finds that this ground for termination has existed for more than one year. Since Chantay's discharge from the hospital and placement with DCF over two and one-half years ago, her parents have barely visited with her. Extremely limited visitation was undertaken by both parents despite the fact that DCF made arrangements on May 1, 1996 for weekly visitation at DCF's offices and unlimited visitation at maternal grandmother's house.
Diane J. visited the home of the maternal grandmother where Chantay was living on only three occasions. Maternal grandmother testified that on those few occasions Diane J. did not contact her in order to see Chantay. She visited only so she could obtain money, food or clothing for herself.
Willie C. has not done much better. He has visited with Chantay on four occasions during the last two and one-half years: twice at maternal grandmother's house, once at DCF's offices and once at prison while he was incarcerated. The visit in prison was initiated by DCF and was not arranged at his request. Although Willie C. was incarcerated for approximately one year during this time period, he had plenty of other opportunity to visit with his daughter. Moreover, it is noteworthy that since his recent release from prison on September 28, 1998, he has made no efforts to visit with Chantay, either by contacting DCF or maternal grandmother. His claim that he did not visit Chantay more at maternal grandmother's home because he felt "uncomfortable" there, rather than justifying his failures to visit, reveal the lack of feeling and concern he holds for Chantay.
Neither Diane J. nor Willie C. have provided any financial CT Page 11783 support to Chantay. They have also not sent any cards, letters or gifts to her. They have not expressed love or affection for her in any manner or at any time. For whatever reason, she is not a significant part of their lives and they have for all intents and purposes abandoned her.
In addition, the evidence presented to the court is clear and convincing that there is no ongoing parent-child relationship between Chantay C. and the respondents, Diane J. and Willie C. General Statutes Section 17a-112(c)(3)(D) defines an ongoing parent-child relationship to mean "the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." In those cases, such as here, involving noncustodial parents who must maintain their relationships with their children through visitation, "the ultimate question is whether the child has no present memories or feelings for the natural parent." (Emphasis in original; internal quotation marks and citations omitted.) In re Valerie D.,223 Conn. 492, 531 (1992). Feelings for the natural parent means feelings that are of a positive nature. In re Jessica M.,217 Conn. App. 459, 469 (1991).
In this case, neither Diane J. or Willie C. has ever met or attempted to meet the continuing day-to-day needs of Chantay C. and neither aspires to do so in the future. Chantay C. has no positive feelings for either of her parents. All of her emotional ties lie with her maternal grandmother. They have a very close relationship which is signified by Chantay calling her grandmother "mommy".
The court further finds that it would be detrimental to the best interest of Chantay to allow further time for the establishment of a parent-child relationship with the respondents. The factors to be considered in making such a determination include (1) the length of stay with the foster parents, (2) the nature of the child's relationship to her foster parents, (3) the degree of contact maintained with the natural parent, (4) the nature of the child's relationship to his or her natural parents and (5) the genetic bond shared by a biological parent and his or her child. In re Kezia M., 33 Conn. App. 12,22 (1993). Chantay C. has lived with her maternal grandmother practically since birth and she has never resided with either of CT Page 11784 her parents. Her parents have rarely visited with her and have not maintained any other form of contact with her. As a result, her bonds abide entirely with her grandmother. Providing additional time for the respondents to establish a parent-child relationship with Chantay would be an empty gesture because there is absolutely no reason to believe that the respondents would take advantage of such an opportunity in light of their past failures to do so. It would be harmful to Chantay because it would further delay the implementation of a permanent plan for her care.
 II. DISPOSITION
Having found by clear and convincing evidence that the statutory grounds alleged by the petitioner for the termination of parental rights of Diane J. and Willie C. with respect to Chantay C. have been proven, the court must determine pursuant to Section 17a-112(c), as amended, if a termination of parental rights is in the best interest of the child. In so doing, the court must consider and make findings on each of the following seven enumerated criteria of General Statutes Section 17a-112
(e). All facts, up to and including the date of trial, must be considered in the dispositional phase.
1. Services Offered: The court finds that DCF offered timely and appropriate services to both respondents to the extent possible under the circumstances. The provision of services was hampered by DCF's inability to locate Diane J. since December, 1996 and the year long incarceration of Willie C. The services offered included substance abuse treatment and outreach services for mother and substance abuse evaluation and counseling services for father.
2. Reasonable Efforts to Reunite: The court finds by clear and convincing evidence that DCF made reasonable efforts to reunite the child and the parents. DCF encouraged and sought to facilitate visitation by both parents, to no avail. Neither parent took advantage of the opportunities to visit with Chantay that were provided. Unfortunately, it is impossible to reunify a child with parents who will not even visit.
3. Court Orders: Court ordered expectations were never established in this case.
4. Significant Emotional Ties: Chantay presently has strong CT Page 11785 emotional ties to her maternal grandmother. Her grandmother has been the only caretaker she has ever known. As noted previously, Chantay refers to her as "mommy." Chantay does not recognize either of her parents. Given the sparse visitation and lack of contact by her parents, it is reasonable to infer that Chantay has little, if any, emotional ties to Diane J. or Willie C.
5. Age of Child: Chantay is two and one-half years old. Given her tender age, the court finds that Chantay needs certainty, consistency and stability in her life.
6. Parents' Efforts to Conform Their Conduct to the Best Interests of the Child: Neither parent has made any effort to conform his or her conduct to the best interests of Chantay. Diane J. has failed to follow through with substance abuse treatment services offered by DCF. Both Diane J. and Willie C. have failed to visit or contact Chantay or to maintain contact with DCF or the maternal grandmother. They have not shown any degree of interest in Chantay's well-being.
7. Impediments to Parent/Child Relationship: There is no credible evidence before the court that mother or father have been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent or by anyone else. The court does not credit Willie C.'s testimony that maternal grandmother made it difficult for him to visit with Chantay. While the economic circumstances of both parents appear to be limited, there is no evidence in the record to support the conclusion that their limited means have interfered in any way with their relationship with their child.
The respondents have done nothing to indicate that they have the ability or the desire to reassume the role of care giver for Chantay C. Fortunately, Chantay is thriving, emotionally and medically, at her maternal grandmother's home, where Chantay lives with her two sisters. Chantay's grandmother has expressed an interest in adopting Chantay. Termination of parental rights would free Chantay for adoption and provide her with permanency and a sense of personal security. It is clearly and convincingly in her best interest that the respondent's parental rights be terminated. This finding is made after considering the child's needs, the length of time she has been separated from her family of origin, her need for a secure and permanent environment, her relationship with her maternal grandmother, and the totality of circumstances surrounding her short life. CT Page 11786
 III. ORDERS
Based on the foregoing findings and upon consideration of all of the evidence in this case, the court concludes that it has been demonstrated by clear and convincing evidence that Diane J. and Willie C. have abandoned Chantay C. and there is no ongoing parent-child relationship between Chantay C. and Diane J. and Willie C. The court finds that these grounds have existed over an extended period of time which is greater than one year. The court further concludes that it has been shown by clear and convincing evidence that it is in the best interest of Chantay C. to terminate the parental rights of Diane J. and Willie C. Accordingly, it is ordered that the parental rights of Diane J. and Willie C. are hereby terminated. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. A permanency plan shall be submitted by DCF within ninety days of the date of this decision.
Upon consideration of all the evidence, the court further finds that Chantay C. has been neglected in that she has been abandoned by Diane J. and Willie C. and that it is in the best interest of Chantay that she be committed to the care of DCF for a maximum period of twelve months from October 19, 1998 through October 19, 1999. The respondent Willie C.'s motion to transfer guardianship is hereby denied.
BY THE COURT
Judge Jon M. Alander